## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## DALLAS DIVISION

YOUTOO TECHNOLOGIES, LLC,

                     Plaintiff,

     v.

TWITTER, INC.,

                    Defendant.

Case No. 3:16-cv-00764-N

**MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS
FIRST AND SECOND CLAIMS OF INFRINGEMENT
FOR FAILURE TO STATE A CLAIM PURSUANT TO 35 U.S.C. § 101**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................1

II.     LEGAL STANDARDS ...............................................................................................1

      A.      Subject Matter Eligibility Is A Threshold Legal Issue Which Can—And
           Should—Be Decided At The Pleadings Stage ........................................................1

      B.      The Supreme Court's Section 101 Framework .......................................................3

III.    ARGUMENT ...............................................................................................................5

      A.      The Claims Of The Challenged Patents Are Directed To An Abstract Idea ..........5

      B.      The Challenged Claims Lack Any Inventive Concept That Would Render
           Them Patentable .....................................................................................................10

1.      THE ONLY HARDWARE DESCRIBED IS IN PURELY FUNCTIONAL AND
      GENERIC TERMS ...................................................................................................10

2.      THE CLAIMS DO NOT IMPROVE THE FUNCTIONALITY OF THE
      SYSTEM'S COMPONENTS ...................................................................................13

3.      THE CLAIMS RISK UNDULY PREEMPTING TRANSCODING OF
      CONSTRAINED VIDEO FORMATS FOR BROADCASTING .....................................14

      C.      The Other Claims Do Not Impact The Analysis....................................................16

IV.     CONCLUSION ...........................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013)........................................................................ 4, 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014)........................................................................ passim

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015)........................................................................ 15

*Bilski v. Kappos*,
561 U.S. 593 (2010)........................................................................ 1, 14

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)........................................................................ 2, 9, 11, 13

*Compression Tech. Solutions, LLC v. EMC Corp.*,
557 F. App'x 2002 (Fed. Cir. 2014) ........................................................................ 2, 9

*Compression Technology Solutions LLC v. EMC Corp.*,
No. 2012-01746, 2013 WL 2368039 (N.D. Cal. May 29, 2013)........................................................................ 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F. 3d 1343 (Fed. Cir. 2014)........................................................................ passim

*Cyberfone Sys., LLC v. Cellco P'ship*,
885 F. Supp. 2d 710 (D. Del. 2012)........................................................................ 2

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
558 F. App'x 988 (Fed. Cir. 2014) ........................................................................ 2, 8, 9, 11

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)........................................................................ 10

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)........................................................................ 13

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)........................................................................ 9

*Enfish LLC v. Microsoft Corp.*, No. 2015-1244, slip op. at 14 (Fed. Cir. May 12, 2016)........................................................................ 13

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
333 U.S. 127 (1948)........................................................................ 1

*Intellectual Ventures I v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)........................................................................ 16

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)........................................................................ 2

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  132 S. Ct. 1289 (2012) .................................................................................... passim

*OIP Techs., Inc. v. Amazon.com, Inc.,*
  788 F.3d 1359 (Fed. Cir. 2015) ................................................................................... 2

*Parker v Flook,*
  437 U.S. 584 (1978) ................................................................................................... 10

*See I/P Engine, Inc. v. AOL Inc.,*
  576 F. App'x 982 (Fed. Cir. Aug. 15, 2014) ............................................................... 2

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
  601 F.3d 1319 (Fed. Cir. 2010) ................................................................................... 1

*Ultramercial, Inc. v. Hulu, LLC,*
  772 F.3d 709 (Fed. Cir. 2014) ............................................................................... 2, 10

## Statutes

35 U.S.C. § 101 ............................................................................................................ passim

## Rules

Fed. R. Civ. P. 12 ............................................................................................................. 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 2

Fed. R. Civ. P. 12(c) ....................................................................................................... 2

## I.     INTRODUCTION

Patent law protects only concrete and tangible inventions.  It does not protect abstract ideas, even when those ideas are claimed in a particular context or implemented with conventional technologies.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *Bilski v. Kappos*, 561 U.S. 593, 611–12 (2010).  These fundamental concepts are "'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none,'" and thus may not be subjected to the monopoly granted by our patent laws.  *Bilski*, 561 U.S at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

The two related patents challenged in this motion—U.S. Patent Nos. 8,464,304 (the "'304 Patent") and 8,601,506 (the "'506 Patent")—violate this principle.  The patents are directed to the abstract idea of capturing video, transcoding that video into a different format, and then uploading the newly-formatted video for distribution.  The challenged claims add nothing to this idea other than (at most) a handful of generic components recited at a high level of generality and performing conventional functions.  That is simply not enough to make them patentable. The claims are invalid as abstract under 35 U.S.C. § 101.

## II.    LEGAL STANDARDS

### A.      Subject Matter Eligibility Is A Threshold Legal Issue Which Can—And Should—Be Decided At The Pleadings Stage

Whether a claim is drawn to patent-eligible subject matter under Section 101 is a threshold inquiry and an issue of law.  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("Whether a claim is drawn to patent-eligible subject matter is an issue of law[.]"); *Bilski*, 561 U.S. at 602 (describing Section 101 as "a threshold test").[1]

For this reason, a district court has broad discretion as to the appropriate time to decide

---

[1]     Emphasis supplied and internal citations omitted throughout, unless otherwise noted.

whether a claim satisfies the requirements of Section 101.  Many federal district courts have resolved disputes over patentable subject matter on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The Federal Circuit has repeatedly upheld district court decisions finding claims abstract in response to motions brought under Federal Rule of Civil Procedure 12. *See, e.g.*, *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015) (affirming Rule 12(b)(6) determination of ineligibility); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (same); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015) (same); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (upholding grant of Section 101 motion brought under Fed. R. Civ. P. 12(c)).

In the present case, the Section 101 issue is ripe for decision because the patent eligibility of the asserted claims does not turn on claim construction.  *See I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. Aug. 15, 2014) (Mayer, J. concurring) ("Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation.").  Indeed, Twitter does not anticipate that Youtoo can propose plausible constructions that would alter the Section 101 analysis.  *See Cyberfone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012), *aff'd*, *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014) (because "plaintiff did not explain how claim construction might alter [the court's § 101] analysis. . . .  the court concludes that it may proceed without the benefit of claim construction").  And absent such a showing, the Section 101 issue is properly decided without claim construction.  *See Compression Tech. Solutions, LLC v. EMC Corp.*, 557 F. App'x 2002 (Fed. Cir. 2014) (summary affirmance of district court's decision to invalidate claims under

Section 101 prior to claim construction after concluding that accepting plaintiff's proffered construction made no difference in the result).

### B.      The Supreme Court's Section 101 Framework

The Supreme Court has prescribed a two-step approach for resolving whether a claim is drawn to subject matter that falls outside the scope of Section 101.  *Alice*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1294-1298.  The first step is to determine whether the claim at issue is directed to a "patent-ineligible concept" such as an abstract idea.  *Alice*, 134 S. Ct. at 2355.  If it is, the second step is to identify "what else" is claimed in order to determine whether the claim describes an "inventive concept" that is "significantly more" than the abstract idea and sufficient to "transform" the nature of the claim.  *Id.*  If it does not, the claim is ineligible under Section 101 and therefore invalid.

If a patent claim includes an abstract idea, the necessary inventive concept cannot simply be the implementation of the idea using standard, off-the-shelf computer technology.  *Id.* at 2352 ("[M]erely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention."); *id.* at 2358-59 ("Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'") (quoting *Mayo*, 132 S.Ct. at 1297).  Indeed, the Federal Circuit has made clear that even combining two or more different pieces of standard computer technology is not sufficient to render a claim patentable.  *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F. 3d 1343, 1347-48 (Fed. Cir. 2014).

Notably, method, system, and device claims are all analyzed identically under Section 101.  The only inquiry for whether method, system, and device claims directed at abstract ideas are invalid is whether the claims "add nothing of substance to the underlying abstract idea."

3

*Alice*, 134 S. Ct. at 2360.  The Supreme Court has made clear that analyzing method, system, and device claims differently under Section 101 would improperly "make patent eligibility 'depend simply on the draftsman's art.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294); *see also Accenture Glob. Servs., GmbH v. Guidewire Software, Inc*., 728 F.3d 1336 (Fed. Cir. 2013) (holding that system claims should rise and fall with method claims despite the recitation of additional hardware components).  Accordingly, the mere fact that a system or device claim may include some hardware limitation not present in the method claims makes no difference for the Section 101 inquiry.  If "none of the hardware recited by the system claims 'offers a meaningful limitation beyond generally linking the use of the [method] to a particular technological environment,'" then the system claims must fail along with the method claims.  *Alice*, 134 S. Ct. at 2360.

Finally, while individual patent claims are independent legal rights, courts are free to treat claims together for purposes of resolving patentable subject matter where those claims contain the same basic elements.  This also flows from the basic principle that Section 101 turns on the subject matter of the claims, not on claim drafting.  *See id.*  For this reason, a movant may challenge eligibility through representative claims and without engaging in a repetitive attack on each claim individually.  *See Content Extraction*, 776 F. 3d at 1348 (finding that the district court "correctly determined that addressing each claim of the asserted patents was unnecessary" because "all the claims are 'substantially similar and linked to the same abstract idea'").

All of the claims challenged in this motion are directed to the same subject matter and contain the same generic computing references.  The claims should, therefore, rise or fall together.

## III.    ARGUMENT

### A.    The Claims Of The Challenged Patents Are Directed To An Abstract Idea

The two patents at issue in this motion are related and share a common specification.[2] Thus, it is not surprising that the claims of both patents[3] are directed to the same abstract idea: capturing video, transcoding that video into a different format, and then uploading the newly-formatted video for distribution.  Transcoding is a process by which (as the name implies) data encoded in one format is translated into another format.  The patents take this conventional and well-understood process as a given—the common specification never attempts to explain what it is or how to accomplish it and instead simply *assumes* that transcoding is a known set of techniques.  The patents then attempt to claim transcoding video files recorded by a user based on certain predetermined format constraints (to make transcoding easier) into a different format (*e.g.*, one that is "appropriate for inclusion in a linear television programming broadcast").

Claim 1 of each of the patents is exemplary.  The two claims are shown here side-by-side with additional material unique to that claim underlined for ease of reference:

| Claim 1 of the '506 Patent | Claim 1 of the '304 Patent |
|---|---|
| 1.  A  method  performed  by  data processing   apparatus,   the   method comprising: | 1.  A  method  performed  by  data processing   apparatus,   the   method comprising: |
| [a]  receiving  video  data  from  a  client computing device at a server system, wherein the video data is captured using a camera communicably coupled to the client computing | [a]  receiving  video  data  from  a  client computing device at a server system, wherein the  video  data  is  captured  using  a  camera connected  to  the  client  computing  device  in |

---

[2]    For ease of reference, Twitter cites the specification of the '304 patent herein.

[3]    Youtoo's Complaint identifies the following asserted claims:  Claims 1, 18, 24, 26, and 30 of the '304 patent, and Claims 1, 2, 3, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 29 and 30 of the '506 patent.  D.I. 1 [Complaint], ¶¶ 21, 26.

| | |
|---|---|
| device in accordance with instructions executed on the client computing device, | accordance with instructions executed on the client computing device, |
| [b] wherein the instructions are provided to the client computing device by the server system and cause the video data to be captured in accordance with predetermined constraints and the predetermined constraints include <u>a video length</u> defined by the instructions, <u>with the video length predefined at the server system in accordance with a time slot in a linear television programming broadcast;</u> | [b] wherein the instructions are provided to the client computing device by the server system and cause the video data to be captured in accordance with predetermined constraints and the predetermined constraints include <u>a frame rate</u> defined by the instructions; |
| [c] transcoding the video data, using a server included in the server system, into at least one different format, wherein at least one format of the transcoded video data defines a video file in a format appropriate for inclusion in the linear television programming broadcast; and | [c] <u>automatically</u> transcoding the video data, using a server included in the server system, into at least one different format <u>based on at least one of user credentials associated with a user of the client computing device or attributes associated with the video data</u>, wherein at least one format of the transcoded video data defines a video file in a format appropriate for inclusion in a linear television programming broadcast; and |
| [d] <u>transferring</u> the transcoded video data to a distribution server for distribution. | [d] <u>uploading</u> the transcoded video data to a distribution server for distribution. |

Both of these claims are directed to the abstract idea of capturing video, transcoding that video into a different format, and then uploading the newly-formatted video for distribution, which the claims then surround with conventional extra-solution activity of the data gathering and the transmission of the results. More specifically, the first step in both claims—"[a] *receiving* video data sent to a server from a client with a camera"—is directed to gathering the data which is acted upon by the method. The same is true of step [b], which specifies that the data is gathered in accordance with instructions specifying the length or frame rate of the

program to be recorded, thus ensuring that the video is in a format suitable for transcoding.[4] Once the appropriately-formatted data is gathered, the claims call for [c] **transcoding** the video into a format "appropriate for inclusion in the linear television programming broadcast," and then [d] **outputting** the result to a server for distribution.

Courts have routinely found that claims directed to gathering, manipulating, and outputting data are abstract in a way that satisfies the first step of the Alice analysis. For example, in *Content Extraction*, 776 F.3d at 1345, the Federal Circuit considered a claim that read as follows:

> A method of processing information from a diversity of types of hard copy documents, said method comprising the steps of:
>
> (a) **receiving** output representing a diversity of types of hard copy documents from an automated digitizing unit and storing information from said diversity of types of hard copy documents into a memory, said information not fixed from one document to the next, said receiving step not preceded by scanning, via said automated digitizing unit, of a separate document containing format requirements;
>
> (b) **recognizing** portions of said hard copy documents corresponding to a first data field; and
>
> (c) **storing** information from said portions of said hard copy documents corresponding to said first data field into memory locations for said first data field.

---

[4]     The patent explains that putting certain technical constraints on the video capture step facilitates transcoding: "For example, the video file recording and editing system can ensure that the submitted video files satisfy certain parameters so that the files have a quality level appropriate for inclusion in linear television programming and so that the files can be automatically and conveniently transcoded into one or more video file formats (in accordance with relevant frame rates, bit rates, etc., which may be dependent on the intended destination of the content) according to the intended destination." '304 patent at 3:20-28 (Summary); *see also id.* at 9:16-23 ("By formatting the video content according to predetermined constraints, the video content can be transcoded into a format appropriate for inclusion in a linear television programming schedule using an automated transcoding workflow corresponding to the predetermined format to ensure that the transcoded video file complies with requirements of a particular television broadcaster or television uplink facility.") (Detailed Description).

*Id.*  The Federal Circuit found that this claim was "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory."  *Id.* at 1347.   The claim at issue in *Content Extraction* is an analogue to the claims at issue here:  both involve [a] receiving digital data representing the output of a conventional device (here a camera, there a document scanner); [b] processing the data (here transcoding, there document recognition); and [c] outputting the data (here to a generic distribution server, there to a computer memory).  The claims are, therefore, abstract in the same way.

Similarly, in *Cyberfone*, 558 F. App'x at 990, the Federal Circuit found abstract:

1. A method, comprising:

[a] ***obtaining*** data transaction information entered on a telephone from a single transmission from said telephone;

[b] ***forming*** a plurality of different exploded data transactions for the single transmission, said plurality of different exploded data transaction[s] indicative of a single data transaction, each of said exploded data transactions having different data that is intended for a different destination that is included as part of the exploded data transactions, and each of said exploded data transactions formed based on said data transaction information from said single transmission, so that different data from the single data transmission is separated and sent to different destinations; and

[c] ***sending*** said different exploded data transactions over a channel to said different destinations, all based on said data transaction information entered in said single transmission.

*Id.*

Like the claims at issue here, the claims in *Cyberfone* were directed to [a] gathering electronic data using a conventional device (*i.e.* a telephone); [b] manipulating the data into a different format; and [c] sending off the result to another location.  The Federal Circuit's determination that "the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-

eligible" is thus equally applicable to the claims here.  *Id* at 992.[5]

The challenged claims are also similar to those found abstract in *buySAFE*, 765 F.3d at 1351-52.  In that case, the Federal Circuit found the challenged claims abstract where they called for [a] "*receiving* … a request from a first party for obtaining a transaction performance guarantee;" [b] "*processing* … the request;" and [c] "*offer[ing]*, via a computer network, the transaction performance guarantee."  *Id.*  The Federal Circuit found that the *buySafe* claim did "not push or even test the boundaries" of the law.  *Id.* at 1354.

And in *Compression Technology Solutions LLC v. EMC Corp.*, the Federal Circuit summarily affirmed a district court holding that claims were abstract when directed to [a] "receiving [an] information stream;" [b] "classifying" the packets in that stream "according to intrinsic characteristics;" and [c] "parsing said input packets into output packets in response to said classifying."  No. 2012-01746, 2013 WL 2368039, at *2 (N.D. Cal. May 29, 2013), *aff'd* 557 F. App'x 1001 (Fed. Cir. 2014).  The process of receiving, parsing, and outputting network packets is analogous to the claims at issue here.

As these cases demonstrate, claims directed to the manipulation of data are abstract.  *See Digitech Image Techs., LLC v. Elecs. for Imaging, Inc*., 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible.").

Simply coupling claim steps directed to data manipulation with steps directing to data gathering and/or outputting the results of the manipulation does not change the analysis.  Indeed,

---

[5]      In reaching this conclusion, the Federal Circuit rejected the argument that the claims' subject matter "cannot be an abstract idea because a human, unaided by devices, could not perform the steps."  *Id*. at 992.  To the contrary, the Federal Circuit made clear that "the category of patent-ineligible abstract ideas is not limited to methods that can be performed in the human mind."  *Id*.

courts repeatedly have held that data gathering and output steps should be considered "extra-solution" activity that does not change the ***subject matter*** of the claim.  *See, e.g.*, *Parker v Flook*, 437 U.S. 584, 590 (1978) ("The notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance."); *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1370 (Fed. Cir. 2011) ("'[M]ere [data-gathering] step[s] cannot make an otherwise nonstatutory claim statutory.'"); *Ultramercial, Inc.*, 772 F.3d at 716 ("[T]he steps of consulting and updating an activity log represent insignificant data-gathering steps … and thus add nothing of practical significance to the underlying abstract idea.").  The exemplary claims of the challenged patents are directed to an abstract idea.

### B. The Challenged Claims Lack Any Inventive Concept That Would Render Them Patentable

The second step of the *Alice* framework requires the Court to search for an inventive concept that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."  *Alice*, 134 S. Ct. at 2355.  Here, there can be no genuine dispute that the asserted claims are lacking any inventive concept.

### 1. The Only Hardware Described Is In Purely Functional and Generic Terms

The Supreme Court has explicitly warned that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment," and, for this reason, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice*, 134 S. Ct. at 2358.  Indeed, "[g]iven the ubiquity of computers . . . [a] wholly generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea

itself.'" *Id.*  Thus, "if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' that addition cannot impart patent eligibility." *Id.* (quoting *Mayo*, 132 S. Ct. at 1301).

Applying that standard, the challenged claims rely purely on standard, well-known computer and video technology, and thus ultimately amount to nothing more than claims to implement the abstract idea with generic and conventional components.  To wit, the challenged claims recite the following components: "client computing device," "server system," "camera," and "distribution server."  None of these components is sufficient to transform the claims.

Courts have repeatedly found that generic references to clients and servers have no impact on eligibility.  For example, in *Accenture*, the Federal Circuit found that claims were invalid under Section 101 even where they called for clients, servers, and various software components, and gave a detailed account of their interactions.  *Accenture*, 728 F.3d at 1345; *see also buySAFE*, 765 F.3d at 1355 ("The claims' invocation of computers adds no inventive concept.  The computer functionality is generic . . . That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

The presence of a camera also does not transform the claim.  At the outset, the claimed camera is used as a data-gathering device (like the telephone in *Cyberfone* or the document scanner in *Content Extraction*) rather than a part of the claimed solution.  Moreover, there is no reasonable dispute that gathering video data through a camera located on a client device and uploading it to a server on the internet was totally conventional.  Indeed, in the "background" section the specification *acknowledges* this fact:

> Still and video cameras, *which are now common features on mobile phones* can be used to take photographs and to record videos that are immediately available for sharing with others through a multi-media messaging service or email, *video file sharing sites, social network and similar services on the Internet* that publish (to selected individuals or groups, or to everyone) *or otherwise make*

*available the photographs and video over the Internet*.

'304 patent at 1:21-28.  Because the equipment (and practice) of using a camera to gather and upload video data to a server was conventional at the time of the application, it cannot be the kind of "inventive concept" that would "transform" the claim into patent eligible subject matter. *See Content Extraction*, 776 F.3d at 1347-48 ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'").

Likewise, the concept of putting certain predetermined constraints on the format (*e.g.*, frame rate) of the video being captured is not an inventive concept that would render the claims patentable.  The asserted patents do not even purport to have invented the concept of frame rates or even specific frame rates appropriate for broadcast television.  Rather, the specification explains that "the video file recording and editing system can ensure that the submitted video files satisfy certain parameters so that the files have a quality level appropriate for inclusion in linear television programming and so that the files can be automatically and conveniently transcoded into one or more video file formats (in accordance with relevant frame rates, bit rates, etc., which may be dependent on the intended destination of the content) according to the intended destination."  '304 patent at 3:20-28; *see also id.* at 4:36-40 ("The predetermined constraints include a bit rate and an image resolution sufficient to enable transcoding of the video data into the format appropriate for inclusion in the linear television programming transmission.").  It makes sense that the patent is not claiming to have invented frame rates or the formatting of video based on frame rates.  Frame rates are inherent in video, and the frame rates for broadcast television of course have been known long before the claimed 2011 priority date.

At bottom, the claims contain nothing other than conventional computer and camera

technology used in a conventional way; there is nothing in them that could transform the claims into patent eligible subject matter.  In fact, the specification takes great pains to emphasize that the invention is not restricted to any particular type of computing device, but rather to preempt the use of **all** hardware and software that might be used to implement the claimed ideas.  *See, e.g.*, '304 patent at 25:49-27:54.  The claims are invalid under Section 101.

### 2. The Claims Do Not Improve The Functionality Of The System's Components

Another factor courts can look to for an inventive concept is whether the claims "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field."  *buySAFE,* 765 F.3d at 1354; *Alice*, 134 S. Ct. at 2351.  However, since *Alice*, the Federal Circuit has found patent eligibility in only two—of approximately forty—cases.  Both cases fall into this category.

First, in *DDR*, the Federal Circuit determined that a patent directed to a system for linking website visitors to other sites while preserving the look and feel of the host site was patent eligible because the claimed solution "is necessarily rooted in computer technology" and "changes the way the Internet functions."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).  In *DDR*, the patented invention addressed a problem that did not and could not exist outside the claimed technological context (i.e., losing website visitors who clicked on links that directed them away from the host site).  Indeed, the claims in *DDR* were found eligible under the second prong of *Alice* because the claims fundamentally "override[d]" the very architecture of a conventional website.  *Id.* at 1258.  Second, just yesterday, the Federal Circuit found patent eligible claims directed to an improved data structure (a "self-referential table") for computer databases.  *Enfish LLC v. Microsoft Corp.*, No. 2015-1244, slip op. at 14 (Fed. Cir. May 12, 2016).  Critical to the Federal Circuit's determination was its finding that the

"self-referential table recited in the claims on appeal is a specific type of data structure ***designed to improve the way a computer stores and retrieves data in memory***."  *Id.* at 18.

Here, the challenged patents do not even purport to, let alone actually, make any improvement to the generic hardware on which the claims run or change the way computing devices or cameras function.  For example, the patent does not purport to invent any new or novel computing device, camera, or server.  *See, e.g.,* '304 patent at 11:65-12:5 ("Example computing devices 120 can include any type of computing device such as a desktop computer, a laptop computer, a handheld computer, a tablet, a personal digital assistant (PDA), a cellular telephone, a network appliance, a camera, a smart phone, an enhanced general packet radio service (EGPRS) mobile phone, or a combination of any two or more of these data processing devices or other data processing devices."); *id.* at 1:21-22 ("Still and video cameras, which are now common features on mobile phones ….") (Background); *id.* at 1:28-31 ("Some dedicated cameras and storage cards now have wireless or network connectivity and video can be uploaded to remote servers for sharing.") (Background); *id.* at 27:15 ("The computing system can include clients and servers.").

And importantly, the claims will not make any of their computer or camera components run faster or more efficiently.  Instead, the claims are only directed at combining those preexisting components (each used for its conventional purpose) to achieve the overall purpose of the claim—its underlying abstract idea.

>                   **3.      The Claims Risk Unduly Preempting Transcoding Of Constrained
>                            Video Formats For Broadcasting**

A patent on an abstract idea effectively preempts the idea itself, and attempts to claim ownership of inventions that a patentee never conceived of, and did not contribute to the state of the art by way of his patent application.  *See Bilski*, 130 U.S. at 611–612; *Mayo*, 132 S. Ct. at

1294 (finding that, by covering a broad range of potential known and unknown uses of an abstract idea, a patent would preempt an entire field and "risk disproportionately tying up" the use of the abstract idea).  For that reason, *Alice* cautioned courts to "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more." *Alice*, 134 S. Ct. at 2354.   "The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 2354–55.

To be clear, preemption is not the test for patentability.  A claim that fails the two-step *Alice* framework is unpatentable whether or not it preempts broadly.  *Mayo*, 132 S. Ct. at 1302 ("The laws of nature at issue here are narrow laws that may have limited applications, but the patent claims that embody them nonetheless implicate this concern."); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility. … Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot.").   But preemption is one of the concerns that motivates the patentable subject matter analysis.

Here, the claims risk potentially preempting the concept of capturing video and transcoding it into formats suitable for broadcast.  Indeed, taken on their face and as Youtoo's Complaint alleges it is applying them, the claims of the asserted patents could be read to cover capturing and transcoding video for broadcast in virtually any context or configuration so long as generic, functional components of a camera (such as a smartphone), server, and computing

device are employed. Such broad claims jeopardize future innovation disproportionately "relative to the contribution of the inventor." *Mayo*, 132 S. Ct. at 1303.

### C.     The Other Claims Do Not Impact The Analysis

As noted at the outset, the eligibility analysis looks at the claimed invention as a whole and does not turn on the form in which claims are drafted. *See Alice*, 134 S. Ct. at 2360. For this reason, the Section 101 analysis can be performed through representative claims, without a detailed consideration of the bells and whistles, or minor differences in form, added by the other claims. But even if the Court were to consider the other claims, they would not change the result.

First, the other independent claims (of both patents) are directed to the same abstract idea found in claim one and simply use a different claim format. For example, independent Claims 17 and 22 of the '304 patent and independent Claims 16 and 23 in the '506 patent claim a "non-transitory computer storage medium encoded with a computer program" which cause a (generic) computer to perform the same basic steps at issue in Claim 1. The only difference is that these claims contain an additional step directed to "displaying, on a client computing device, a user interface" through with the user can select content to record with the camera. This is of no import to eligibility—it is simply another data gathering step making use of generic and conventional computer equipment. *See Intellectual Ventures I v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("The 'interactive interface' simply describes a generic web server with attendant software, tasked with providing web pages to and communicating with the user's computer.").

Similarly, asserted independent Claim 26 in the '304 patent and independent Claim 26 in the '506 patent both reframe the method of Claim 1 as a system. Both of these claims call for

multiple (unspecified) "user devices" and "one or more servers operable to interact with the plurality of user devices to" perform the steps recited in Claim 1.   "Put another way, the system claims are no different from the method claims in substance.   The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea." *Alice*, 134 S. Ct. at 2360.

Thus, the Court should not reach a different result for any of the independent claims in either of the patents.

The asserted dependent claims also have no bearing on the outcome.   Instead those claims are directed to adding either (i) various different kinds of data manipulation (e.g. the use of various conventional coding formats as outputs), and/or (ii) the use of various conventional technologies (such as computer scripts, browsers, and plug ins) in connection with the abstract idea.   None of these concepts is sufficient to transform the claims, and instead simply recite additional abstractions (insofar as they relate to data manipulation) or conventional computing elements (such as computer scripts and browser plug-ins).   In any event, insofar as Youtoo contends that some specific claim makes a difference to the analysis, it is incumbent on Youtoo to explain why it believes that claim should be considered separately so that Twitter can address it on reply. *See Content Extraction,* 776 F. 3d at 1348.

## IV.   CONCLUSION

The claims of the challenged patents are directed to an abstract idea and contain nothing other than conventional computer components and technologies.   The claims therefore satisfy both prongs of the *Alice* framework and are invalid under Section 101.

17

Dated:  May 13, 2016                    DURIE TANGRI LLP

                                        By: */s/ Sonal N. Mehta*

                                        SONAL N. MEHTA (*Pro Hac Vice*)
                                        smehta@durietangri.com
                                        LAURA E. MILLER (*Pro Hac Vice*)
                                        lmiller@durietangri.com
                                        JAMES S. TSUEI (*Pro Hac Vice*)
                                        jtsuei@durietangri.com
                                        217 Leidesdorff Street
                                        San Francisco, CA 94111
                                        Telephone: 415-362-6666
                                        Facsimile: 415-236-6300

                                        HAYNES & BOONE LLP
                                        David L. McCombs
                                        Charles M. Jones II
                                        2323 Victory Avenue, Suite 700
                                        Dallas, TX 75219
                                        United States of America
                                        T: 214.651.5000
                                        F: 214.651.5940

                                        Attorneys for Defendant Twitter, Inc.

## <u>CERTIFICATE OF SERVICE</u>

On May 13, 2016 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

_____ */s/ Sonal N. Mehta*_____
