# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| YOUTOO TECHNOLOGIES, LLC, | |
| Plaintiff, | Civil Action No. 3:16-cv-00764-N |
| v. | Judge David C. Godbey |
| TWITTER, INC., | |
| Defendant. | |

## PLAINTIFF YOUTOO TECHNOLOGIES, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND ......................................................................................... 2

III.    LEGAL STANDARDS ............................................................................... 4

IV.     ARGUMENT .............................................................................................. 6

        A.      The Challenged Claims Are Not Abstract ...................................... 6

        B.      The Challenged Claims Are Inventive ........................................... 13

                1.      Claimed Hardware Is Not Purely Functional And Is Not Generic  13

                2.      The Claims Improve Functionality and Efficiency .......................... 15

                3.      The Claims do not unduly preempt transcoding ............................ 17

                4.      This Court Should Review Each Patent Claim for Patentability..... 20

V.      CONCLUSION ........................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Alice Corp. Pty Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)....................................................................4, 11, 13, 16, 17, 18, 19, 20

*Apple, Inc. v. Mirror World*,
  Case CBM2016-00019 at 14 .............................................................................21

*Apple, Inc. v. Mirror World Techs., LLC*,
  No. CBM2016-00019, at 14 (P.T.A.B. May 26, 2016) .............................12, 13, 17

*Bilski v. Kappos*,
  561 U.S. 593 (2010)..........................................................................................18

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ........................................................................10

*Cal. Inst. of Tech. v. Hughes Communs., Inc.*,
  2014 U.S. Dist. LEXIS 156763, explained........................................................11

*CLS Bank Int'l v. Alice Corp. Pty*,
  717 F.3d 1269 (Fed. Cir. 2013) ........................................................................19

*Compression Technology Solutions LLC v. EMC Corp.*,
  No. 2012-01746, 2013 WL 236039 (N.D. Cal. May 29, 2013), *aff'd* 557 F.
  App'x 1001 (Fed. Cir. 2014)..............................................................................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F. 3d 1343 (Fed. Cir. 2014) ......................................................................9, 20

*Cyberfone Sys., LLC v. Cellco P'ship*,
  885 F. Supp. 2d 710 (D. Del. 2012), *aff'd, Cyberfone Sys., LLC v. CNN
  Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014) ..................................9

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ..........................................................................9

*DDR Holdings, LLC v. Hotels.com, L.P. (DDR Holdings II)*
  773 F.3d 1245 (Fed. Cir. 2014) ............................................................10, 11, 12, 16

iii

*Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.,*
   758 F.3d 1344 (Fed. Cir. 2014) ...........................................................................10

*Enfish, LLC v. Microsoft Corp.,*
   No. 2015-1244, slip op. (Fed. Cir. May 12, 2016) .............................................5, 7, 8, 15, 16

*Intellectual Ventures I, LLC v. Motorola Mobility LLC,*
   No. 11-908-SLR, 2015 U.S. Dist. LEXIS 21718 (D. Del., Feb. 24, 2015) ..........................12

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.,*
   132 S. Ct. 1289 (2012)..........................................................................................6, 18

*Smartflash LLC v. Apple, Inc.,*
   6:13-cv-447-JRG-KNM, 2015 U.S. Dist. LEXIS 18419 (E.D. Tex., Jan. 21,
   2015) ........................................................................................................................12

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015)....................................10

**Statutes**

35 U.S.C. § 101 ..................................................................................1, 4, 5, 7, 9, 13, 15, 20, 21

## I.    INTRODUCTION

Defendant Twitter, Inc. ("Twitter") has moved to dismiss two of three claims for patent infringement asserted by Plaintiff Youtoo Technologies, LLC ("Youtoo"). Notably, Twitter does not request dismissal of Youtoo's claim for infringement of U.S. Patent No. 9,083,997 (the '997 patent).   Twitter's sole basis for *partial* dismissal is premised on the incorrect assertion that the claims of U.S. Patent Nos. 8,464,304 (the '304 Patent) and 8,601,506 ("the '506 Patent"), collectively ("the challenged patents"), are ineligible for patent protection under 35 U.S.C. § 101.   However, the challenged claims are (1) not abstract and (2) inventive; thus, they are patentable.

Twitter mischaracterizes Youtoo's invention.   The invention does not simply "capture video, transcode it to a different format, and then upload the newly-formatted video for distribution." (Dkt. No. 28-1 at 5). The content creation and distribution system actually directs a camera or user device via an application/interface regarding the capture of video data using defined quality and time parameters (high definition v. standard; frame rate; bit rate; length of time), automatically causes the video data to be transcoded into a video file that can either be reviewed or allowed to be distributed in near real time, and uploading for distribution in linear television programming or a social media platform.   ('304 Patent, 3:3-36, 7:8-17; '506 Patent 10:64-67, 11:18-24). The inventions in the challenged patents are new, and they dramatically improved the

television production process. Accordingly, this Court should deny Twitter's partial motion to dismiss.

## II.    BACKGROUND

The '304 Patent, entitled "Content Creation and Distribution System," issued on June 11, 2013. The '506 Patent, entitled "Content Creation and Distribution System," issued on December 3, 2013. The patents are related; the '506 Patent is a continuation of application No. 13/185/471, the application that resulted in the '304 Patent. The challenged patents are directed to the field of content creation and distribution for interactive television and social media. They teach methods, embodied in computer software and hardware; for automatically transcoding recorded video files to video files that can be used by a television broadcast system, as well as an encoded computer storage medium and system.

The inventors of the challenged patents, Mark Harwell, Christopher Wyatt and Ryland Reed, sought to solve significant problems related to the commercially-scalable, timely integration of video content from television audiences via consumer devices for use in television broadcasts (as well as contemporaneous syndication to mobile, social, and web properties related to the same television broadcasts and networks). The inventors sought to solve the problems related to the use of audience video content from consumer devices for use in television broadcasts:

> The subject matter can be used to encourage submission of, and facilitate curation of, crowd-sourced video or other user-generated content. The content creation sub-system can be used to ensure that video files are received in one or more preselected formats and in accordance with predetermined parameters, which can facilitate automated transcoding according to one or more software-implemented transcoding workflows. Video can be quickly and conveniently transcoded into one or more formats appropriate for selected types of distribution (e.g. linear television programming or Internet distribution).

('304 Patent, 7:1-11)

> The subject matter can be used to encourage crowd-sourced video submission and to provide an interactive production process and can eliminate confusion, time and expense associated with sourcing and copying crowd-sourced or user generated content that can potentially be generated in multiple formats, frame rates, and bit rates by, among other things, automatically transcoding video content into a particular format that is ready for distribution through television in addition to automatically transcoding the video content into other formats that can be used for other content distribution outlets. These techniques can reduce cost at the production state, and can provide a production team with more time for creative aspects of a production process to produce a more compelling broadcasting product.

('304 Patent, 7:17-31)

Indeed, the inventions facilitate incorporating crowd-sourced/user-generated video content into linear programming within minutes of capture in a manner that is both technically scalable, and commercially viable so that advertising sponsors may pay television networks to "sponsor" interactive audience participation segments of the programming:

> In other words, the incoming video file can be transcoded using a predetermined transcoding process without having to interpret the data, develop a transcoding process, edit the video, and/or perform manual processing. Such techniques

- 3 -

allow received video to be quickly transcoded and can facilitate incorporating captured video into linear programming within minutes of capture.

('304 Patent, 11:13-19; '506 Patent, 11:6-24).

Youtoo's technology was hailed as revolutionary in the social media-broadcast television field with network executives describing it as "[giving] viewers a chance to take part in a national conversation around a show." (Dkt. No. 1 at 2). Even Twitter's own executives declared that "nobody else has a producer-user interface that facilitates multi-user content like Youtoo," and "[Youtoo] is the most powerful technology we've seen to date." (Dkt. No. 1 at 4). Before this suit, several television networks hired Youtoo to provide the patented services for them. (Dkt. No. 1 at 2). Under the guise of entering into an elaborate "partner" relationship, Twitter enticed Youtoo into sharing access to proprietary details of Youtoo's inventions with Twitter in a "digital sandbox." (Dkt. No. 1 at 3-4). Yet, after learning how to implement Youtoo's technology, Twitter copied the patented techniques and incorporated them into its Vine application without a license. (Dkt. No. 1 at 4-5).

## III.   LEGAL STANDARDS

Under *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014), the two – step process for determining § 101 validity is: first determining whether the claim at issue is directed to a patent-ineligible concept, i.e., an abstract idea; and if it is, second, considering whether the claim's additional elements transform the nature of the claim into a patent-eligible application.  But the first prong fails if the claims improve upon

and function differently from conventional database structures. *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, slip op. at 17-18 (Fed. Cir. May 12, 2016).

In *Enfish*, the Federal Circuit reversed a district court finding that software claims directed to an "innovative logical model for a computer database" were invalid under 35 U.S.C. § 101 as directed to an abstract idea. The Federal Circuit explained:

> **Software can make non-abstract improvements to computer technology just as hardware improvements can, and sometimes the improvements can be accomplished through either route.** We thus see no reason to conclude that all claims directed to improvements in computer-related technology, including those directed to software, are abstract and necessarily analyzed at the second step of Alice, nor do we believe that Alice so directs. **Therefore, we find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the Alice analysis.**

No. 2015-1244, slip op. at 11 (emphasis added). A claim does not automatically fail by virtue of the invention's ability to run on a general purpose computer. Instead, the key inquiry is whether the claims are directed to an improvement in the functioning of a computer rather than merely adding conventional computer components to a well-known business practice. *Id.* at 16-18.

Youtoo's invention improved legacy broadcast infrastructure by creating a method of adding crowd-sourced video content in a manner that was both technically scalable and allowed television networks to comply with industry standards. The invention also added to the television production process by allowing television production teams to integrate user generated content (UGC) in an efficient, timely

manner that could also be sponsored by television advertising sponsors.  ('304 Patent, 18:29-38).

But even if the Court were to assume the claims are directed to an abstract idea, they must be upheld if the claimed implementation "add[s] *enough* … to allow the processes they describe to qualify as patent-eligible processes that *apply*" the putative abstract idea rather than seeking to monopolize the idea itself.  *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1297 (2012).   A patent claim satisfies that test if it improves an existing technological process.   And the claims here do just that.   They recite a technological method that enables a computer or Television Distribution System ('304 Patent, 220 Fig 2.) to do something it could not do before – technically scalable broadcast integration of crowd-sourced video files into linear television programming for near real-time broadcast.

## IV.    ARGUMENT

### A.    The Challenged Claims Are Not Abstract

The challenged claims are not abstract.  Rather, the claims as taught by the specification solved a problem faced by broadcasters, such as television networks, who sought to incorporate self-recorded videos submitted over the Internet.  In order for television networks to incorporate crowd-sourced videos, television producers need video files of consistent length (or total frame rates), technical quality, and meet certain industry standards.   Cost-efficient television production demands that any video

elements included in a linear television program conform to existing broadcast standards. Legacy television distribution systems are not flexible enough to accommodate multiple video file format and unconventional video file lengths. ('304 Patent, 7:16-34, 9:10-43, Fig. 1, 9:44-11:19, Fig. 2, and 18:29-47).

Twitter reduces the method claims to three steps in order to shoehorn them into its cited authority. (Dkt. No. 28-1 at 6-8). But this attempt to mischaracterize the claims is exactly what *Enfish* teaches against. Here, as in *Enfish*, Twitter attempts to characterize the claims "at such a high level of abstraction and untethered from the language of the claims all but [ensuring] that the exceptions to the § 101 swallow the rule." (Dkt. No. 28-1 at 7-10). *See Enfish*, slip op. at 14.

The '304 patent[1] teaches the use of specific parameters, such as video file length (or frame rate in the '506 patent) that must be satisfied in order for video files to be included in linear television programming. The '304 patent further teaches that in order to achieve the high standards of the television industry, consumer devices are controlled by a system of thin client software installed on consumer devices and a central server system that instructs, with great specificity, how the thin client controls the client camera (and computing device) in a manner that allows users to submit video files that comply with the length/duration, technical specifications, and editorial constraints of legacy television distribution systems. If technical and editorial

---

[1] Youtoo cites the specification of the '304 patent for both patents at issue.

parameters are met, the files can be automatically and conveniently transcoded into one or more video file formats appropriate for a plurality of destinations as determined by the production staff.  ('304 Patent, 3:3-36, 4:1-19, 46-45, 6:4-11, 17-24).  Controlling the client device, automated filtering of video files and automatic transcoding taught by the patents is a drastic improvement to the computer functionality itself improving efficiency, review, and production time; minimizing confusion and expense.  ('304 Patent; 7:1-34, 18:29-53).

The present invention does not simply "collect video data" as Twitter suggests. (Dkt. No. 28-1 at 6).  Rather, it controls the video capture process with great specificity on the computing device (Fig. 1 120; Fig. 2 234, 232, and 230; 5:8-16, 5:27-36, 5:66-6:4, 6:29-42, 7:3-34) such that the system accelerates and improves the process of capturing the video in the right format from the user device and then uploading the subsequently transcoded video to broadcast system 220 quickly and efficiently so that captured video can be included in linear television in near real time.  ('304 Patent, 5:8-16, 5:27-36, 5:66-6:4, 6:29-42, 7:3-34, 11:13-19).

As in *Enfish*, the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity.

In support of its argument that claims directed to the manipulation of data are abstract, Twitter relies upon cases that are distinguishable. (Dkt. No. 28-1 at 7-9). For

- 8 -

example, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F. 3d 1343, 1347-48 (Fed. Cir. 2014), on which Twitter heavily relies, the claimed invention entirely "[lacked] physical components, merely beginning with data collection and ending with data storage." The court in *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) found the same deficiency, holding claims invalid under §101 because "the plain language of claim 3 does not require the method to be performed by a particular machine, or even a machine at all".

Twitter's reliance on *Cyberfone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012), *aff'd*, *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014) is also misplaced. The *Cyberfone* decisions involved claims that were directed to the mere collection, separation, and transmission of electronic data, and the Federal Circuit determined that those claims were too abstract and hence patent ineligible. *Id*. Here, in contrast, the challenged claims first manage the recording of content from a plurality of consumer devices (smart phones, tables, computers capable of recording High Definition ("HD") video content), then "translate" the content to a separate video format a television producer could review on a web-based administrative tool, and then translate a second time into a format suitable for airing on a legacy broadcast system quickly and efficiently.

Finally, Twitter points to several cases[2] involving computers whose only function was to run algorithms, or provide processing power to increase the speed and efficiency of existing commercial practices. The Federal Circuit has explicitly differentiated abstract, ineligible subject matter such as "mathematical algorithms … executed on a generic computer" and "fundamental economic and conventional business practices" from those rooted in the advancement of computer technology, stating:

> [T]hese claims stand apart [and are thus eligible for patent protection] because they do not merely recite the performance of some business practice known from the pre-internet world along with the requirement to perform it on the Internet. Instead, *the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks*."

*DDR Holdings, LLC v. Hotels.com, L.P., (DDR Holdings II)* 773 F.3d 1245, 1257 (Fed. Cir. 2014) (emphasis added).

The court in *DDR Holdings II* recognized that claims containing mathematical algorithms or fundamental economic or longstanding commercial practices are more likely to be abstract, which was the common flaw in the cases on which Twitter relies. The claims in those cases have only a generic computer presence and data gathering steps because they utilize the existing processing power of a computer to perform

---

[2] *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015) (same) and *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1351 (Fed. Cir. 2014); *Compression Technology Solutions LLC v. EMC Corp.,* No. 2012-01746, 2013 WL 236039, at *2 (N.D. Cal. May 29, 2013), *aff'd* 557 F. App'x 1001 (Fed. Cir. 2014) and *Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014)

traditionally non-computerized functions.  This is a sharp contrast to inventions claiming an actual improvement to the very computer or computer components included in the claims.  The asserted claims in the '506 and '304 claims, which are directed to increased ability and ease of converting video and audio files, are serve to fundamentally improve the computer technology itself. Prior to the invention of the challenged patents, it was not possible to record video content, automatically review and curate the content, and immediately make it available for broadcast on live television or via social media. (Dkt. No. 1 at 2).

Several cases subsequent to *DDR Holdings II* have recognized and applied the "computer improvement" principle.  The court in *Cal. Inst. of Tech. v. Hughes Communs., Inc.*, 2014 U.S. Dist. LEXIS 156763 at *20, explained the principle as follows: "The Supreme Court [in *Alice*] clarified some aspects of the doctrine … perhaps most significantly, it left open the possibility that claims which improve the functioning of the computer itself or any other technology are patentable."  The court then found the claims at issue eligible for patentability in part because they present a "unique computing solution that addresses a unique computing problem." *Id*. at *62.  The challenged patents here similarly set out a unique computing problem – the desire to quickly and effectively "facilitate convenient creation and seamless uploading of crowd-sourced video files… or other user-generated content" into live television broadcasts, for example – and the unique solution set out in the asserted claims.  ('304

- 11 -

Patent at 3:13-35). Twitter had not been able to solve that problem on its own; it had to resort to coping Youtoo's technology. (Dkt. No. 1 at 5).

In *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, No. 11-908-SLR, 2015 U.S. Dist. LEXIS 21718 (D. Del., Feb. 24, 2015), the court found that even if some claims recited some generic devices and fundamental data collection steps and covered the concept of allocating wireless bandwidth in a certain fashion, the invention does "not merely claim an abstract idea and say apply it with a computer;" instead "like the claims in *DDR*, the present invention is necessarily rooted in computer technology." *Id.* at *29.

The court in *Smartflash LLC v. Apple, Inc.*, 6:13-cv-447-JRG-KNM, 2015 U.S. Dist. LEXIS 18419 (E.D. Tex., Jan. 21, 2015) found technology relating to "conditioning and controlling access to data based on payment" initially abstract yet still patent-eligible because "the asserted claims contain meaningful limitations that transform the abstract idea … into a patent-eligible invention." *Id.* at *41-42. In citing to *DDR Holdings II,* the *Smartflash* court explained the "meaningful limitations" equated to a "solution rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* at *43.

Likewise, the United States Patent and Trademark Office Patent Trial and Appeal Board confirmed the validity of claims that addressed problems of organizing and finding "electronic data units" because they are not abstract. *Apple, Inc. v. Mirror World*

*Techs., LLC*, No. CBM2016-00019, at 14 (P.T.A.B. May 26, 2016). The PTAB found that these problems "specifically arose in the realm of computers and…did not exist in the pre-computer world of paper documents." *Id*. Specifically, the following problems did not exist in the pre-computer world: (1) naming and locating documents based on document name; (2) enabling multi-level branching tree folder systems; (3) searching for documents created by different applications; (4) archiving electronic documents. *Id*.

In summary, the challenged claims are not abstract.

## B.     The Challenged Claims Are Inventive

Although this Court need not reach the second prong of the *Alice* test because Twitter has not met its burden to overcome the first, the challenged claims are inventive under § 101.

### 1.     Claimed Hardware Is Not Purely Functional And Is Not Generic

The challenged patents do not merely recite a generic computer to transform a patent-eligible abstract idea. Rather, the implementation of specified parameters on the user device via servers dictates the video files that are created and then transcoded and sent to the television distribution system 220 for broadcast. Use of the components of the content creation sub-system results in an automatic transcoding of files into a usable format for the distributor. ('304 Patent, 10:7-37).

The content creation and distribution system (CCDS) ('304 Patent; Fig. 1; Fig. 2, 202) is a complex set of interconnected software and server systems that enable a legacy

Television Distribution System (TDS) ('304 Patent, Fig. 2, 220) to broadcast crowd-sourced video data that was automatically delivered to the TDS by the CCDS ('304 Patent, Fig. 2, 202) in a usable format for broadcast or Internet distribution. The invention teaches using set parameters, like specific video recording lengths and frame rates, to dictate the requisite file format and duration recorded by a user. The '304 Patent describes one example of set parameters to include using Omneon CODEC for an SD broadcast ('304 Patent, 18:53-19:4).[3] Moreover, the authorization interface (Fig. 1, 134) interacts with the traffic server (Fig. 2, 224) and broadcast server (Fig. 2, 226) to determine whether a file should be added to the linear television broadcast in the appropriate video file format utilized by the broadcast server. ('304 Patent, 22:54-23:7). Thus the invention, an automated screening process, speeds up the entire process by creating two pathways for a video file: 1) flag frames within the video that may require additional scrutiny and 2) approve a video file for near immediate inclusion in a broadcast. ('304 Patent, 22:25-45).

Twitter's argument about the use of cameras is similarly incorrect. The claimed invention does not passively collect video data from a camera. Rather, in instances of web-based recording, the invention actually controls the camera's video capture process

---

[3] This example was determined only after months of trial and error on Youtoo's own television broadcasting stations – AmericanLife TV and FamilyNet – in Dallas, Texas, and after investing millions of dollars to purchase those stations. (Dkt. No. 1 at 2).

to ensure video data from the camera are conducted according to detailed specifications that improve the transcoding process to a format suitable for inclusion in linear TV (.MXF format as one, non-limiting  or non-exclusionary example) or distribution to the Internet (e.g., MP4 format).  ('304 Patent, 5:8-16, 5:27-36, 5:66-6:4, 6:29-42, 7:3-34, 11:13-19 20:66-21:27).

### 2. The Claims Improve Functionality and Efficiency

The challenged claims are inventive because they effect a drastic improvement in the exploding area of interactive television.  *See Enfish*, No. 2015-1244, slip op. at 11.

Twitter concedes that a patent that addresses a problem that did not and could not exist outside the claimed technological context is patentable.  (Dkt. No. 28-1 at 13).  Indeed, the Federal Circuit reversed invalidity findings where claims are "necessarily rooted in computer technology" and where claims are directed to an improved data structure.  *Enfish*, No. 2015-1244, slip op. at 11.

While Twitter recognizes that the Federal Circuit found claims to a data structure "*designed to improve the way a computer stores and retrieves data in memory*" patentable over Section 101 (Dkt No. 28-1 at 14), it argues that the challenged patents do not "make any improvement to the generic hardware on which the claims run or change the way computing devices or cameras function.  For example, the patent does not purport to invent any new or novel computing device, camera, or server."  *Id.*  Youtoo disagrees.

- 15 -

The '304 Patent teaches in great detail how authorization interface 134 (Fig1) interacts with traffic server 224 (Fig 2) and broadcast server 226 (Fig 2) to be added to the linear television broadcast in the appropriate video file format utilized by server 226 (Fig 2). ('304 Patent, 22:54 – 23:7). This is a drastic improvement to the previously utilized method of manually completing all of these tasks over a much longer span of time. This is an improvement of legacy Television Distribution System 220. None of these servers were originally designed, manufactured and deployed with the concept of airing user generated video content from consumer devices. They were designed and manufactured to broadcast video content from professional studio cameras and microphones that create video files as much as 10 times larger than those of similar length created by a consumer device (234, 232, or 230).

Moreover, the '304 Patent also teaches in detail how the claimed inventions improve the process of adding crowd-sourced video to the production and broadcast process. ('304 Patent, 18:26-53). The challenged claims improve the way a user device and server retrieves video files and transcodes them for broadcast. In *DDR*, the patent-at-issue helped preserve the look and feel of the host site. In *Enfish*, the patent-at-issue helped store and retrieve data. Here, the patents help with the creation, review, transfer and publication of video files from outside sources. The claims satisfy the second prong of the *Alice* test.

Similar to *Apple, Inc. v. Mirror World Techs., LLC*, No. CBM2016-00019, at 15 (P.T.A.B. May 26, 2016), Twitter isolates individual claim elements separately "abstracting" each step of the claim, and fails to consider the claim as a whole.   The specifications of the challenged patents also demonstrate that the inventions addressed a problem that "arose specifically in the realm of computer operating systems." *Id*; ('304 Patent, 1:49 – 2:53). Thus, the challenged patents are not abstract and satisfy the second prong of the *Alice* test.

### 3.    The Claims do not unduly preempt transcoding

Ignoring the limitations recited in the challenged claims, Twitter argues that the challenged claims risk preempting the concept of "capturing video and transcoding it into formats suitable for broadcast."  (Dkt. No. 28-1 at 15).  However, the claims recite specific limitations including, for example, "video data to be captured in accordance with predetermined constraints and the predetermined constraints include a frame rate defined by the instructions" and "automatically transcoding the video data…"  The claimed steps are not required for "capturing and transcoding video in *any* context or configuration," as Twitter contends (Dkt. No. 28-1 at 15), but instead are limited to capturing video and transcoding it in a specific format specifically for linear broadcasting.  Importantly, there are other ways to capture and transcode video into a format suitable for broadcast without adopting the limitations of the claimed inventions. Indeed, the claimed steps could be replaced with other or different steps.

- 17 -

One could have, for example, utilized the broadcast graphic server, instead of the broadcast server, which would have resulted in "framed" view instead of a full frame view that requires the .MXF video file format.

Twitter argues that "…the claims of the asserted patents could be read to cover capturing and transcoding video for broadcast in virtually any context or configuration so long as the generic, functional components of a [camera], server, and computing device are employed." (Dkt. No. 28-1 at 15-16). Twitter argues that Youtoo has consequently run afoul of precedent from *Bilski* and *Mayo*, which stand for the proposition that "[a] patent on an abstract idea effectively preempts the idea itself, and attempts to claim ownership of inventions that a patentee never conceived of, and did not contribute to the state of the art by way of his patent application." *See Bilski v. Kappos*, 561 U.S. 593 (2010); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012). As discussed above, there is a range of alternative methods that Youtoo's claims do not, and were not intended to, cover. The challenged patents in no way preclude others from developing or utilizing alternative methods. Youtoo aims only to protect precisely what it claimed in the challenged patents.

In *Alice*, the Supreme Court cautioned against equating "patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more… The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection. The latter pose

- 18 -

no comparable risk of pre-emption, and therefore remain [patent eligible.]" *Alice*, 134 S. Ct. at 2354-55. Critically, however, the Federal Circuit also noted earlier "…it is important to remember that all patents 'pre-empt' some future innovation in the sense that they preclude others from commercializing the invention without the patentee's permission. Pre-emption is only a subject matter eligibility problem when a claim preempts all practical uses of an abstract idea." *CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269, 1300 (Fed. Cir. 2013).

Indeed the teachings of the Supreme Court highlight precisely why Youtoo's asserted claims are patentable and do not preempt the field. Youtoo took building blocks that were readily available, invested time and substantial resources into configuring and modifying those components, and integrated them into an invention that was technically scalable, commercially viable, and a novel method of broadcasting original crowd-sourced video content on live television and social media.   In fact, Twitter even copied and implemented the patented inventions in its Vine application. (Dkt. No. 1 at 5).  Under the guise of entering into a partnership, Twitter enticed Youtoo to permit access to a "digital sandbox" in which Twitter could evaluate Youtoo's software. (Dkt. No. 1 at 3-4).

Thus, there is no risk of preemption here; the limitations of the challenged claims narrow the inventions so as to not preempt a fundamental concept or idea.

**4.      This Court Should Review Each Patent Claim for Patentability**

Twitter's reliance on *Alice* and *Content Extraction* as support for having this Court review only one claim (a method claim) is mistaken.   In both of those cases, the claimants did not challenge defendants' characterization of one claim to be representative for purposes of a Section 101 analysis by the Court.   *See Alice*, 134 S. Ct. at 2351; *Content Extraction*, 776 F.3d at 1346.   But in any event, neither case places the burden on YouToo to explain why a specific claim makes a difference to the analysis.   Rather, the burden remains on Twitter.

Regardless, Twitter's brief focuses exclusively on claim 1 of the challenged patents, but Twitter seeks to have this Court invalidate all of the other claims of these patents, including the system and non-transitory computer storage medium claims (of both patents).   Twitter contends that the independent claims "are directed to the same abstract idea found in claim 1 and simply use a different format." (Dkt. No. 28-1 at 16).   However, as discussed above, Twitter's characterization of the claimed inventions are not accurate.   For example, regarding the independent system claims, claim 26 includes one or more servers to store transcoded video data; regarding the independent computer medium claims, claim 17 includes a user interface adapted to allow a user to selectively record specific content.

Moreover, the dependent claims add particular limitations that make them even less abstract than the independent claims.   For example, claim 24 includes instructions

downloaded from a web server and installed on a client device in order to capture a specific high definition video data.  That teaching is an improvement to a problem that is "necessarily rooted in computer technology" and is not abstract under Section 101. *See Apple, Inc. v. Mirror World*, Case CBM2016-00019 at 14.

To prevail on its motion, Twitter must demonstrate, by clear and convincing evidence, that each and every claim of the challenged patents is fatally abstract.  By ignoring the limitations recited in the claims of the challenged patents and failing to provide evidence and analysis demonstrating the alleged invalidity of each and every claim, Twitter has not met its high burden of proof.

## V.    CONCLUSION

For the foregoing reasons, Twitter's partial motion to dismiss should be denied.

/s/ Paul K. Vickrey
Jonathan T. Suder (Texas State Bar No. 19463350)
Todd I. Blumenfeld (Texas State Bar No. 24067518)
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East Fourth Street, Suite 200
Fort Worth, Texas 76102
Email: jts@fsclaw.com
Email: blumenfeld@fsclaw.com
Tel.:    (817) 334-0400
Fax:    (817) 334-0401

Paul K. Vickrey (N.D. Texas Bar No. 90393IL)
Olivia T. Luk (*pro hac vice*)
Laura A. Kenneally (*pro hac vice*)
Gretchen L. Schmidt (*pro hac vice*)
NIRO LAW
181 West Madison St., Suite 4600

- 21 -

Chicago, Illinois  60602
Email: vickrey@niro.law
Email: oluk@niro.law
Email: lkenneally@niro.law
Email: gschmidt@niro.law
Tel.:    (312) 236-0733
Fax:    (312) 236-3137

***Counsel for Youtoo Technologies, LLC***

## CERTIFICATE OF SERVICE

On June 3, 2016, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

*/s/ Paul K. Vickrey*