**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **YOUTOO TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Case No. 3:16-cv-00764-N** |
| | § | |
| **TWITTER, INC.,** | § | |
| | § | |
| *Defendant*. | § | |

**VIDSTREAM LLC'S MOTION
TO RECONSIDER AND FOR LEAVE TO AMEND, AND BRIEF IN SUPPORT**

Mark C. Howland
 Texas Bar No. 24027240
 mhowland@ccsb.com
Ken Carroll
 Texas Bar No. 03888500
 kcarroll@ccsb.com
Steve Levine
 Texas Bar No. 12258100
 slevine@ccsb.com
Seth Horwitz
 Texas Bar No. 24043733
 shorwitz@ccsb.com
**CARRINGTON, COLEMAN,
 SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202
TELEPHONE: (214) 855-3000
FACSIMILE: (214) 855-1333

*Attorneys for VidStream LLC*

## CONTENTS

Contents ...................................................................................................................2

Authorities................................................................................................................3

I.      Procedural Background...................................................................................8

II.     Standards Applicable to Motions to Reconsider and for Leave to Amend...................10

        A.      Motion to Reconsider.........................................................................10

        B.      Motion for Leave to Amend Complaint...........................................11

III.    Argument .......................................................................................................13

        A.      *Berkheimer* and *Aatrix*: A Sea Change in the Law ...........................13

        B.      The Federal Circuit's Current § 101 Framework Leaves No Question that the '304 and '506 Patents are Directed to Patent-Eligible Subject Matter. ......15

                1.      New Federal Circuit law has clarified *Alice* step one. ..........................16

                2.      The claimed inventions in the '304 and '506 patents are not directed to an abstract idea under *Alice* step one. ................................20

                3.      *Berkheimer* and *Aatrix* preclude dismissal because there is—at the very least—a disputed issue of fact on *Alice* step two. ...................25

        C.      Given the Changes in the Law and Facts, VidStream Is Entitled to Amend. ...29

IV.     Conclusion .....................................................................................................31

Certificate of Conference ......................................................................................32

Exhibit 1:  [Proposed] Second Amended Complaint

## AUTHORITIES

**Cases**                                                                                              **Page(s)**

*3rd Eye Surveillance, LLC v. United States*,
140 Fed. Cl. 39 (2018) .......................................................................................................15, 29, 30

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)........................................................................................*passim*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014).........................................................................................................*passim*

*Amdocs (Israel) Ltd. v. Opennet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016)...........................................................................................19, 25

*Ancora Technologies, Inc. v. HTC America, Inc.*,
908 F.3d 1343 (Fed. Cir. 2018)......................................................................................17, 18, 23

*Austin v. Kroger Tex., L.P.*,
864 F.3d 326 (5th Cir. 2017) ...............................................................................................10, 11

*BASCOM Global Internet Services, Inc. v. AT&T Mobility, LLC*,
827 F.3d 1341 (Fed. Cir. 2016).............................................................................18, 19, 25, 26

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018).......................................................................................*passim*

*Berkheimer v. HP Inc.*,
890 F.3d 1369 (Fed. Cir. 2018)...................................................................................7, 13, 14

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)..........................................................................................25, 26

*Clapper v. Am. Realty Inv'rs, Inc.*,
No. 3:14-CV-2970-D, 2017 WL 978098 (N.D. Tex. Mar. 14, 2017)................................12, 30

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
880 F.3d 1356 (Fed. Cir. 2018)..........................................................................................18, 24

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)............................................................................................18, 24

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ....................................................................................................11

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)..............................................................................16, 20, 23, 25

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
Nos. H-01-3624, H-03-0815, 2011 WL 3489524 (S.D. Tex. Aug. 9, 2011) ...................... 12, 30

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
No. 2:15-cv-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) ................................. 28

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) ...................................................................................... 11

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)................................................................................ 17, 23

*GiGi's Cupcakes, LLC v. 4 Box LLC*,
No. 3:17-CV-3009-B, 2018 WL 6068817 (N.D. Tex. Nov. 19, 2018).................................... 10

*Grimsley v. Methodist Richardson Med. Ctr. Found., Inc.*,
No. 3:09-cv-2011-D, 2011 WL 825749 (N.D. Tex. Mar. 3, 2011) .......................................... 12

*Hoffman v. L & M Arts*,
No. 3:10-CV-0953-D, 2012 WL 4321739 (N.D. Tex. Sept. 21, 2012) ........................ 12, 13, 31

*HP Inc. v. Berkheimer*,
No. 18-415, 2020 WL 129532 (U.S. Jan. 13, 2020) ..................................................... 8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017).................................................................................... 13

*Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*,
362 F. Supp. 3d 370 (E.D. Tex. 2019)........................................................................... 28

*IPA Techs., Inc. v. Amazon.com, Inc.*,
307 F. Supp. 3d 356 (D. Del. 2018)............................................................................... 30

*Iturralde v. Shaw Grp., Inc.*,
512 F. App'x 430 (5th Cir. 2013) ................................................................................ 12

*Jackson v. Methodist Hosps. of Dall.*,
No. 3:05-CV-1345-N, 2006 WL 8437071 (N.D. Tex. July 19, 2006).................................... 12

*Janvey v. Bogar*,
No. 3:14-CV-03635-N, 2016 WL 11471975 (N.D. Tex. Feb. 24, 2016) ................................ 10

*Koninklijke KPN N.V. v. Gemalto M2M GMBH*,
942 F.3d 1143 (Fed. Cir. 2019)................................................................................... 17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012).............................................................................................. 15, 26

*Official Stanford Inv'rs Comm. v. Am. Lebanese Syrian Associated Charities, Inc.*,
No. 3:11-CV-0303-N, 2016 WL 8216510 (N.D. Tex. Jan. 7, 2016)...................................... 12

*S&W Enters., L.L.C. v. Southtrust Bank of Ala., N.A.*,
315 F.3d 533 (5th Cir. 2003) .................................................................................................12

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
601 F.3d 1319 (Fed. Cir. 2010)...............................................................................................13

*Talent Broker Tech. LLC v. Musical.ly, Inc.*,
No. CV 17-08532 SJO, 2018 WL 3019912 (C.D. Cal. Mar. 8, 2018) ....................................30

*Texas v. United States*,
336 F. Supp. 3d 664 (N.D. Tex. 2018) ...................................................................................11

*Thunder Power New Energy Vehicle Dev. Co. Ltd. v. Byton N. Am. Corp.*,
340 F. Supp. 3d 922 (N.D. Cal. 2018) ....................................................................................30

*Ubiquitous Connectivity, LP v. City of San Antonio*,
No. SA-18-CV-00718-XR, 2019 WL 4696421 (W.D. Tex. Sept. 26, 2019) ..........................30

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
793 F.3d 1306 (Fed. Cir. 2015)...............................................................................................13

*Visual Memory LLC v. NVIDIA Corporation*,
867 F.3d 1257 (Fed. Cir. 2017)..............................................................................16, 17, 23, 27

*United States ex rel. Wall v. Vista Hospice Care, Inc.*,
No. 3:07-CV-0604-M, 2017 WL 5483747 (N.D. Tex. Nov. 14, 2017)..............................10, 11

*Wilder v. Caliber Home Loans, Inc.*,
No. 3:18-CV-3010-N-BN, 2019 WL 652462 (N.D. Tex. Feb. 15, 2019) ...............................11

*In re Youtoo Techs., LLC*,
No. BK-17-14849-JDL (Bankr. W.D. Okla.) ............................................................................9

**Statutes**

11 U.S.C. § 363..........................................................................................................................9

28 U.S.C. § 1292(b) ...................................................................................................................8

35 U.S.C. § 101..................................................................................................................*passim*

35 U.S.C. § 102.....................................................................................................................9, 26

35 U.S.C. § 103..........................................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 12 .....................................................................15, 29, 30

Federal Rule of Civil Procedure 12(b)(6) ...................................................................*passim*

Federal Rule of Civil Procedure 15 ............................................................................12, 31

Federal Rule of Civil Procedure 15(a) ..............................................................................11

Federal Rule of Civil Procedure 15(a)(2) ..........................................................................11

Federal Rule of Civil Procedure 16 ............................................................................12, 30

Federal Rule of Civil Procedure 16(b)...............................................................................12

Federal Rule of Civil Procedure 25(c) ...............................................................................10

Federal Rule of Civil Procedure 54(b)..........................................................................10, 11

Federal Rule of Civil Procedure 56 ...................................................................................28

Federal Rule of Civil Procedure 59(e) ..........................................................................10, 11

Local Rule 15.1(b) .........................................................................................................8, 26

Dennis Crouch, *Patent Eligibility: Underlying Questions of Fact*, PATENTLYO
(Feb. 8, 2018)....................................................................................................................14

Dennis Crouch, *Patent Eligibility: Eligibility Analysis and Its Underlying Facts:*
*A Roadmap for Surviving Dismissal on the Pleadings*, PATENTLYO (Feb. 15, 2018)..........14

Ryan Davis, *Recent Patent-Eligibility Cases Leave Unanswered Questions*, LAW 360
(Mar. 12, 2018) ................................................................................................................14

**VidStream LLC has moved this Court to substitute it as Plaintiff in this action. Motion to Substitute Party and Counsel, and Brief in Support (Doc. 153). As explained in that Motion to Substitute and as established by the documents accompanying that motion (Appx., Doc. 154), the patents at issue in this action, together with all claims and causes of action related to those patents, have been transferred to VidStream through the bankruptcy Trustee for Youtoo Technologies, LLC. VidStream files this Motion to Reconsider and for Leave to Amend subject to that Motion to Substitute**.

In an Order issued November 11, 2016 (Doc. 39), this Court granted Twitter, Inc.'s motion to dismiss Youtoo Technologies' causes of action for infringement with respect to U.S. Patent No. 8,464,304 (the " '304 patent") and U.S. Patent No. 8,601,506 (the " '506 patent"). The Court found the claims with respect to the '304 and '506 patents to be "patent-ineligible" under 35 U.S.C. § 101 and the patents themselves therefore to be invalid—leaving for resolution only the causes of action with respect to a third patent, No. 9,083,997 (the "'997 patent"). Order (Doc. 39) at 2-5.

But, whether the Court was correct in that original assessment, things have changed. A lot. In response to Twitter's requests for *inter partes* review, the Patent and Trial Appeal Board of the United States Patent and Trademark Office ("PTAB") rejected Twitter's contention that the claims associated with the '304 and the '506 patents are "unpatentable." Further, in the time since this Court's partial-dismissal Order, the Federal Circuit has altered the analytical approach to patentability issues under § 101, and not in a small way. *See Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1128 (Fed. Cir. 2018), *and Berkheimer v. HP Inc*., 881 F.3d 1360, 1368 (Fed. Cir. 2018). The Federal Circuit's decisions in *Berkheimer* and *Aatrix* have been recognized as a "precedential sea change" in § 101 analysis. *Berkheimer v. HP Inc*., 890 F.3d 1369, 1377 n.3 (Fed. Cir. 2018) ("*Berkheimer II*") (Reyna, J., dissenting from denial of rehearing en banc). Uncertainty about the permanence of this change lingered, however, as litigants sought review en banc and then asked the United States Supreme Court to address the issue. But finally doubts about whether this new

- 7 -

approach would "stick" vanished a couple months ago when the Supreme Court denied certiorari in *Berkheimer*, leaving in place this "sea change" in the analytical approach to § 101 issues, articulated after this Court issued its order of partial dismissal. *See HP Inc. v. Berkheimer*, No. 18-415, 2020 WL 129532 (U.S. Jan. 13, 2020).

In light of these dramatic developments and changes in both the law and facts pertinent to this case, VidStream urges this Court to vacate its prior order of partial dismissal and grant leave for VidStream to file a proposed Second Amended Complaint (attached as Exhibit 1, pursuant to Local Rule 15.1(b)), so that this case can be resolved on the basis of the facts as they now exist, measured by the law as it now exists.

## I.      Procedural Background

Youtoo Technologies commenced this action against Twitter, asserting patent infringement claims with respect to the '304, '506, and '997 patents. Complt. (Doc. 1) ¶¶ 1, 18-33. Twitter responded by filing a "Partial Motion to Dismiss" the first and second of those infringement claims, dealing with the '304 and '506 patents, arguing those patents are directed to abstract ideas that are unpatentable under 35 U.S.C. § 101. *See generally* Twitter's Partial Motion to Dismiss (Doc. 28) *and* Memorandum in Support (Doc. 28-1).

This Court granted Twitter's partial motion to dismiss on November 11, 2016, finding the claims with respect to the '304 and '506 patents to be "patent-ineligible" under § 101 and those Patents themselves therefore to be invalid. Order (Doc. 39). The Court certified that decision for interlocutory appeal under 28 U.S.C. § 1292(b). *Id*. at 5. The Federal Circuit, however, denied Youtoo's application to pursue that interlocutory appeal. Fed. Cir. Order (Doc. 50 in this case). Without addressing the merits, the Federal Circuit found it "cannot say that this is one of those exceptional cases that justifies departing from the usual course of appellate review after entry of a final judgment." *Id*.

Litigation continued in this Court with respect to the '997 patent. But Twitter also opened a second front, seeking *inter partes* review ("IPR") of the three patents-in-suit before the PTAB. Despite the Court's prior Order finding the '304 and '506 patents invalid under 35 U.S.C. § 101—or perhaps concerned about the finality of that Order, given the uncertain state of the law—on March 24, 2017, Twitter filed IPRs further challenging their patentability under 35 U.S.C. §§ 102 and 103. The PTAB instituted review of every challenged claim in the '304 and '506 patents. After a trial on the merits, the PTAB issued Final Written Decisions ("FWDs") on January 23, 2019, finding Twitter failed to prove that any of the challenged claims in the '304 or '506 patents were unpatentable. '304 FWD at 13-15, 20, 25-29, 31 (Appx. 15-17, 22, 27-31, 33); '506 FWD at 13-14, 26-27, 29 (Appx. 47-48, 60-61, 63). The PTAB found none of the prior-art references relied on by Twitter disclosed or rendered obvious a key inventive concept found in each independent claim of the '304 and '506 patents. *Id.*

Meanwhile, on November 30, 2017, Youtoo filed a voluntary Chapter 7 bankruptcy petition in the Western District of Oklahoma. *See* Petition (Doc. 1), *In re Youtoo Techs., LLC*, No. BK-17-14849-JDL (Bankr. W.D. Okla.). Shortly thereafter, on December 18, 2017, this Court stayed this case.

In the course of that bankruptcy case, a predecessor-in-interest of VidStream purchased various assets from the Youtoo bankruptcy estate in a sale approved by the Bankruptcy Court, pursuant to 11 U.S.C. § 363.[1] Among the "Purchased Assets" were the patents that are the subject of this case and "all claims and causes of action related thereto."[2]

---

[1] *See* Trustee's Report of Sale (Doc. 55), Motion to Sell Property (Doc. 41), Agreed Order Approving Motion to Sell Property (Doc.49), *and* Order Nunc Pro Tunc (Doc. 57), *In re Youtoo Techs., LLC*, No. BK-17-14849-JDL (Bankr. W.D. Okla.).

[2] Motion to Sell Property (Doc. 41) ¶ 43, Order Nunc Pro Tunc (Doc. 57), *In re Youtoo Techs., LLC*, No. BK-17-14849-JDL (Bankr. W.D. Okla.).

The '304, '506, and '997 Patents and all claims and causes of action related to them, including the infringement claims asserted in this case, then were assigned to VidStream. *See* Appx. to Motion to Substitute (Doc. 154) 29-34. VidStream then moved to be substituted for Youtoo Technologies as Plaintiff in this case, pursuant to Federal Rule of Civil Procedure 25(c). Motion to Substitute (Doc.153). That motion remains pending before this Court.

## II.    Standards Applicable to Motions to Reconsider and for Leave to Amend

### A.    Motion to Reconsider

This Court's Order (Doc. 39) dismissing Youtoo's claims with respect to the '304 and the '506 patents was interlocutory. Twitter's Motion to Dismiss was labeled as "Partial" (*see* Doc. 28), and the Court's Order made clear that claims with respect to the '997 patent remained pending in this case. *See* Order (Doc. 39) at 1-2, 5. This motion to reconsider the Court's Order, therefore, is governed by Rule 54(b)—which provides that any such interlocutory order "may be revised at any time before the entry of a judgment"—rather than Rule 59(e), which applies to motions to reconsider final judgments. *GiGi's Cupcakes, LLC v. 4 Box LLC*, No. 3:17-CV-3009-B, 2018 WL 6068817, at *1-2 (N.D. Tex. Nov. 19, 2018) (citing *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)).

"Under Rule 54(b), the Court has broad discretion to reconsider and modify its prior order '***for any reason it deems sufficient***, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *United States ex rel. Wall v. Vista Hospice Care, Inc.*, No. 3:07-CV-0604-M, 2017 WL 5483747, at *3 (N.D. Tex. Nov. 14, 2017) (Lynn, C.J.) (quoting *Austin*, 864 F.3d at 336 (emphasis added)). True, "[f]or prudential reasons, courts in this district and elsewhere have considered factors similar to those that courts would consider under the more rigorous standard of a motion to alter a judgment under Federal Rule of Civil Procedure 59(e)." *Janvey v. Bogar*, No. 3:14-CV-

03635-N, 2016 WL 11471975, at *4 (N.D. Tex. Feb. 24, 2016) (Godbey, J.). But "[t]he Court's discretion to reconsider its interlocutory ruling is not limited by the heightened standards of other rules which govern reconsideration of final orders, including Rule 59(e)." *Vista Hospice Care, Inc.*, 2017 WL 5483747, at *3 (citing *Austin*, 864 F.3d at 336); *accord Texas v. United States*, 336 F. Supp. 3d 664, 669 (N.D. Tex. 2018) (same). Instead, the Court's approach to a Rule 54(b) motion is more "flexible"; for example, "in contrast to a Rule 59(e) motion, the district court may consider 'new arguments' on a Rule 54(b) motion that the movant did not raise in prior briefing." *Texas*, 336 F. Supp. 3d at 669 (quoting *Austin*, 864 F.3d at 337). Ultimately, the decision whether to grant reconsideration rests in the discretion of the Court.

**B.     Motion for Leave to Amend Complaint**

"[T]he federal rules' policy 'is to permit liberal amendment to facilitate determination of claims on the merits.'" *Wilder v. Caliber Home Loans, Inc.*, No. 3:18-CV-3010-N-BN, 2019 WL 652462, at *2 (N.D. Tex. Feb. 15, 2019) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). So, Federal Rule of Civil Procedure 15(a)(2) adopts a generous, albeit not automatic, approach to requests to amend pleadings: "courts should 'freely give leave [to amend] when justice so requires.'" Order (Doc. 85) at 2 (quoting Rule 15(a)(2), brackets original). "Rule 15(a) provides a 'strong presumption in favor of granting leave to amend.'" *Wilder*, 2019 WL 652462, at *2 (quoting *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006)). In fact, a "Court must do so 'unless there is a substantial reason to deny leave to amend.'" *Id.* (quoting *Dussouy*, 660 F.2d at 598).

In this case, however, the Scheduling Order (Doc. 34) required motions for leave to amend pleadings to be filed by January 2017. It went on to provide that any motion for leave

to amend filed after that "must show good cause pursuant to Rule 16(b)." *Id.* ¶ 1. And so the Rule 16 "good cause" standard must be addressed first.

"To meet this [good cause] standard, the moving party must show that, despite his diligence, he could not reasonably have met the scheduling order deadline." *Grimsley v. Methodist Richardson Med. Ctr. Found., Inc.*, No. 3:09-cv-2011-D, 2011 WL 825749, at *5 (N.D. Tex. Mar. 3, 2011) (Fitzwater, C.J.). "Whether to modify a scheduling order [to allow amendment] is a question of trial management left to th[e] Court's discretion." *Official Stanford Inv'rs Comm. v. Am. Lebanese Syrian Associated Charities, Inc.*, No. 3:11-CV-0303-N, 2016 WL 8216510, at *1 (N.D. Tex. Jan. 7, 2016) (Godbey, J.) (citing *Iturralde v. Shaw Grp., Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013) (per curiam)). "Four factors guide this exercise of discretion: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* (quoting *S&W Enters., L.L.C. v. Southtrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003)). "No factor is dispositive, and the Court is not required to give specific weight to one factor compared to another." *Id.* Instead, "the court considers the four factors holistically." *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2012 WL 4321739, at *4 (N.D. Tex. Sept. 21, 2012) (Fitzwater, C.J.).

Proposed amendments prompted by changes in the law or newly discovered (or newly occurring) facts commonly satisfy the "good cause" standard. *See, e.g., Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-D, 2017 WL 978098, at *3-4 (N.D. Tex. Mar. 14, 2017) (newly discovered facts); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, Nos. H-01-3624, H-03-0815, 2011 WL 3489524, at *6 (S.D. Tex. Aug. 9, 2011) (change in the law).

If the movant surmounts the Rule 16 "good cause" hurdle, the Court returns to the "more liberal standard" for amendments embodied in Rule 15. *Jackson v. Methodist Hosps. of*

*Dall.*, No. 3:05-CV-1345-N, 2006 WL 8437071, at *2 (N.D. Tex. July 19, 2006) (Godbey, J.).

There, "[t]he court may consider factors such as undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party, and futility of amendment." *Hoffman*, 2012

WL 4321739, at *4; *see also* Order (Doc. 85) at 2. None of these considerations militate

against VidStream's proposed amendment here.

### III.    Argument

#### A.    *Berkheimer* and *Aatrix*: A Sea Change in the Law

In its order of partial dismissal, this Court relied on Federal Circuit declarations that,

"Whether a claim is drawn to patent-eligible subject matter is an issue of law." Order (Doc.

39) at 2 (quoting *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir.

2010)). Not surprising, given that this appeared to have been the analytical approach

consistently employed by the Federal Circuit in § 101 cases up to that time. *See, e.g.*,

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017);

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1331 (Fed. Cir. 2015). In fact, one

Federal Circuit Judge observed that, "Perhaps the single most consistent factor in this court's

§ 101 law has been our precedent that the § 101 inquiry is a question of law." *Berkheimer II*,

890 F.3d at 1377 (Reyna, J., dissenting from denial of rehearing en banc).

But in early 2018—after this Court had ruled and while Youtoo Technologies lay in

the throes of bankruptcy—the Federal Circuit issued two decisions that changed everything:

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), and

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018).

In overturning a summary judgment and then a Rule 12(b)(6) dismissal against patent

holders in those cases, the Federal Circuit explained that, "While the ultimate determination

- 13 -

of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix*, 882 F.3d at 1128; *accord Berkheimer*, 881 F.3d at 1368 ("[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts."). And, the *Berkheimer* and *Aatrix* panels held, where a claimant demonstrates a genuine issue on these "subsidiary fact questions," patent eligibility under § 101 cannot be decided on a summary basis, either on a motion to dismiss or a motion for summary judgment. *Aatrix*, 882 F.3d at 1128 (dismissal); *Berkheimer*, 881 F.3d at 1369 (summary judgment).

The importance of the analytical shift wrought by *Berkheimer* and *Aatrix* can scarcely be overstated. Federal Circuit Judge Jimmie V. Reyna, who dissented in *Aatrix*, wrote, "*Aatrix* and *Berkheimer* alter the § 101 analysis in a significant and fundamental manner by presenting patent eligibility under § 101 as predominantly a question of fact." *Berkheimer II*, 890 F.3d at 1377 (Reyna, J., dissenting from denial of rehearing en banc). The USPTO itself issued a memorandum of changes in examination procedure in light of *Berkheimer*.[3] And Judge Reyna further observed that "Commentators have described the decisions as a 'precedential sea change,' in tension with prior cases resolving the eligibility question on the pleadings as a question of law." *Berkheimer II*, 890 F.3d at 1377 n.3.[4]

---

[3] *See* USPTO, Memorandum on Changes in Examination Procedure Pertaining to Subject Matter Eligibility, Recent Subject Matter Eligibility Decision (*Berkheimer v. HP, Inc.*) (Apr. 19, 2018), *available at* https://www.uspto.gov/sites/default/files/documents/memo-berkheimer-20180419.PDF.

[4] Judge Reyna referenced, as examples, Dennis Crouch, *Patent Eligibility: Eligibility Analysis and Its Underlying Facts: A Roadmap for Surviving Dismissal on the Pleadings*, PATENTLYO (Feb. 15, 2018), https://patentlyo.com/patent/2018/02/eligibility-underlying-surviving.html; Dennis Crouch, *Patent Eligibility: Underlying Questions of Fact*, PATENTLYO (Feb. 8, 2018), https://patentlyo.com/patent/2018/02/eligibility-underlying-questions.html; Ryan Davis, *Recent Patent-Eligibility Cases Leave Unanswered Questions*, LAW 360 (Mar. 12, 2018), https://www.law360.com/articles/1020953?scroll=1o. *Berkheimer II*, 890 F.3d at 1377 n.3.

But the Federal Circuit didn't stop with its reversals of summary judgment and dismissal. In *Aatrix* the Court went on to hold that a court errs if it dismisses without allowing a claimant to amend to allege facts that would demonstrate a genuine issue on patent eligibility under § 101. 882 F.3d at 1125-27. And that is where we find ourselves now. *Cf. 3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 46 (2018) (where patent-infringement claims are attacked by Rule 12 motion arguing patent ineligibility under § 101, and the plaintiff seeks leave to amend to add patentability facts, "the court looks at these issues at the same time," as the Federal Circuit did in *Aatrix*).

**B.      The Federal Circuit's Current § 101 Framework Leaves No Question that the '304 and '506 Patents are Directed to Patent-Eligible Subject Matter.**

The Supreme Court's *Alice* patentability inquiry has two steps. In the first step, a court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). If the court determines the claims are directed to an "abstract idea" (presumptively ineligible for patent protection) in step one, it must proceed to the second step of the *Alice* inquiry.  At step two, the court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). The Supreme Court has described this second step as a "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

New Federal Circuit law has clarified the analytical framework under step one, and as described above, has fundamentally altered the step-two inquiry. In view of new facts averred in VidStream's Proposed Second Amended Complaint—including the PTAB's recent

- 15 -

patentability findings in the '304 and '506 patent IPRs—these changes in the law make clear that the '304 and '506 patents are directed to patent-eligible subject matter.

### 1. New Federal Circuit law has clarified *Alice* step one.

The Supreme Court has indicated that claims "purport[ing] to improve the functioning of the computer itself," or "improv[ing] an existing technological process" may not succumb to the abstract-idea exception. *Alice*, 573 U.S. at 223-25. And the Federal Circuit applied this rationale to the *Alice* inquiry in *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1335 (Fed. Cir. 2016). In *Enfish*, the Federal Circuit held claims directed to a self-referential logical model for a computer database to be patent-eligible under step one of *Alice*. *Id.* at 1330. As the claimed technique enabled faster searching and more effective storage of data than previous, conventional methods, it was "directed to a specific improvement to the way computers operate," rendering it patent-eligible under § 101. *Id.* at 1336. Many Federal Circuit cases in the wake of *Enfish*—most issued after this Court's 2016 Order granting Twitter's partial motion to dismiss—have clarified through further examples that improvements in computer functionality are not "abstract ideas" under step one.

Several such cases hold that software-based innovations, ranging from the storage and use of configuration parameters to new methods of performing software-based tasks, are not abstract where they improve the speed, efficiency, effectiveness, or other functionality of a computer system. For example, in *Visual Memory LLC v. NVIDIA Corporation*, the Federal Circuit held claims directed to a memory system having programmable operational characteristics were not abstract under *Alice* step one. 867 F.3d 1257, 1262 (Fed. Cir. 2017). As the patent specification explained that the ability to configure the memory system using software parameters allowed users to install different processors without compromising performance, the claims were directed to a "more efficient memory system." *Id.* at 1259-60.

This "improvement in computer functionality" rendered the claims patent-eligible:

> Configuring the memory system based on the type of processor connected to the memory system is the improvement in computer technology to which the claims are directed. *Alice* requires no more from the claims or the specification to support our conclusion that the claims are not directed to an abstract idea. This conclusion is particularly proper on a motion to dismiss under Rule 12(b)(6), where all factual inferences drawn from the specification must be weighed in favor of Visual Memory, the non-moving party.

*Id.* at 1261-62.

Similarly, in *Ancora Technologies, Inc. v. HTC America, Inc.*, the Federal Circuit found a method of restricting unlicensed software operation on a computer using information stored in a modifiable part of the computer's BIOS to be patent-eligible under § 101. 908 F.3d 1343, 1348 (Fed. Cir. 2018). Storing and using information in the computer's BIOS in this manner was a "non-abstract computer-functionality improvement" as it was "done by a specific technique that departs from earlier approaches to solve a specific computer problem" (improving security). *Id.*

In addition, in *Finjan, Inc. v. Blue Coat Systems, Inc.*, the Federal Circuit affirmed the district court's finding that claims directed to an improved method of virus scanning were patent-eligible under § 101. 879 F.3d 1299, 1305-06 (Fed. Cir. 2018). The court noted that certain concepts in the claims at issue, such as virus screening and performing a virus scan on an intermediary computer, were conventional and abstract. *Id.* at 1304. But the step of creating a "security profile that identifies suspicious code in [a] received" file—which was construed to require a "behavior-based" virus scan—enabled "more flexible and nuanced virus filtering" than prior "code-matching" systems. *Id.* at 1304. For this reason, the claims as a whole were found to be directed to a non-abstract improvement in computer functionality, "rather than the abstract idea of computer security writ large." *Id.* at 1305.  *See also Koninklijke KPN N.V. v. Gemalto M2M GMBH*, 942 F.3d 1143, 1145, 1150 (Fed. Cir. 2019)

(claims directed to method of varying over time the way check data is generated in a data transmission error detection system "are patent-eligible because they are directed to a non-abstract improvement in an existing technological process (i.e., error checking in data transmissions)").

In a second group of cases, the Federal Circuit recognized that patentable improvements in computer functionality extend to improvements in computer system usability or efficiency in use. For example, *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, held claims directed to an "improved user interface for computing devices" were not abstract. 880 F.3d 1356, 1362-63 (Fed. Cir. 2018). "Although the generic idea of summarizing information certainly existed prior to the invention," the claims were "directed to a particular manner of summarizing and presenting information in electronic devices," improving "[t]he speed of a user's navigation through various views and windows." *Id.*; *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007-11 (Fed. Cir. 2018) (finding claims directed to a specific method for navigating through electronic spreadsheets not abstract because the claimed methods provided "a specific solution to then-existing technological problems in computers and prior art electronic spreadsheets").

Finally, a third group of cases makes clear that software-implemented changes in a computer system's architecture to improve system functionality are not abstract. For example, in *BASCOM Global Internet Services, Inc. v. AT&T Mobility, LLC*, the Federal Circuit held that a method and system for filtering internet content using an Internet Service Provider ("ISP") server was not abstract. 827 F.3d 1341, 1352 (Fed. Cir. 2016).[5] "By taking a prior art filter solution (one-size-fits-all filter at the ISP server) and making it more dynamic and

---

[5] While *BASCOM* was decided under *Alice* step two, the Federal Circuit recognized in *Ancora* that there was overlap "between some step one and step two considerations," and found the reasoning of *BASCOM* to support its decision that claims were not abstract under *Alice* step one. 908 F.3d at 1349.

efficient (providing individualized filtering at the ISP server [as opposed to locally at the individual user's computer]), the claimed invention represents a 'software-based invention[] that improve[s] the performance of the computer system itself.'" *Id.* at 1351. In holding the claimed invention eligible under *Alice* step two, the court reasoned that while "[f]iltering content on the Internet was already a known concept, ... the patent describes how its particular arrangement of elements is a technical improvement over the prior art ways of filtering such content." *Id.* at 1349-50.

Similarly, in *Amdocs (Israel) Ltd. v. Opennet Telecom, Inc.*, the Federal Circuit held claims directed to a distributed architecture for processing accounting records were not patent ineligible under at least *Alice* step two because they were directed at an improvement in computer functionality. 841 F.3d 1288, 1300-01 (Fed. Cir. 2016).[6] This "distributed enhancement" to the computer system's architecture—whereby data could reside in the peripheries of the system while remaining accessible to a central location—purportedly improved computer functionality by reducing congestion in the network that would otherwise be caused by massive record flows to a large central database. *Id.* at 1300-01. Thus, while the claims at issue involved "arguably conventional components," the claim's distributed architecture required the "generic components [to] operate in an unconventional manner to achieve an improvement in computer functionality." *Id.* at 1300-02.

These recent decisions share a common analytical thread: The key question is whether the claims are directed to a specific asserted improvement in computer functionality rather

---

[6] The court noted that "there is considerable overlap between step one and step two," and found it unnecessary to determine whether this improvement in computer functionality rendered the claimed subject matter patentable under step one; instead, the court held that whether or not the claim was abstract under step one, it was patent-eligible under step two as it was an unconventional arrangement of generic components to achieve an improvement in computer functionality. *Id.* at 1294, 1300-01.

than "economic or other tasks for which a computer is used in its ordinary capacity." *Enfish*, 822 F.3d at 1336.

> **2.    The claimed inventions in the '304 and '506 patents are not directed to an abstract idea under *Alice* step one.**

The '304 patent and its continuation, the '506 patent, share a common specification and are directed to improved systems and methods for creating and distributing user-generated video content over a variety of networks. Prior art systems allowed users to distribute user-generated videos by uploading them to web-based video file-sharing sites or social networks. *See*, *e.g.*, '304 patent at 1:17-28 (Appx. 89). In these conventional video-sharing systems, the user device is in complete control of the manner in which video is recorded and uploaded to the server system. A key inventive concept claimed in the '304 and '506 patents turns this conventional architecture on its head by putting the ***server system*** in control of the video capture process that occurs via the user device.



FIG. 2

As illustrated in Figure 2, user devices, which may comprise a computing device (232) having a video camera (234) or a mobile device (230) (*e.g.*, smart phone, tablet, etc.) capable

of capturing video, can communicate with a Content Creation and Distribution System (202) ("CCDS") via a communications network (204). '304 patent at 14:30-36 (Appx. 95). Users can capture video content on these user devices for transmission to the CCDS. *Id.* at 15:9-10 (Appx. 96). Servers associated with the CCDS can receive and store video data in its native format and can transcode the received video into one or more alternative formats for distribution by destination media outlets, including, *e.g.*, television distribution systems, Internet broadcasts, Internet video blogs, and other types of Internet distribution. *Id.* at 10:45-55 (Appx. 93); 15:23-28 (Appx. 96). Other servers associated with the CCDS can organize video content for review and perform automatic review of video content for inappropriate material. *Id.* at 15:57-16:9 (Appx. 96).

Video content is captured via the user device and formatted according to predetermined constraints supplied by the server system. *Id.* at 9:12-15; 10:56-59 (Appx. 93). In one example, this key inventive concept is implemented by the server system providing a thin-client interface to the user computing device whereby instructions are executed partially on the server system and partially on the user computing device. *Id.* at 10:25-37; 12:12-18, 49-62 (Appx. 93-94). In another example, the server system provides a fat-client application download to the user computing device (*e.g.,* mobile application software), which can be executed on the user computing device to capture video content and record such content to storage locations of the CCDS. *Id.* at 12:19-25, 45-49 (Appx. 94). Whether implemented as "a thin client application or a specialized application installed on a user device, the application *can enforce predetermined constraints* on the captured video." *Id.* at 10:56-59 (Appx. 93) (emphasis added). Such predetermined constraints may include quality parameters, such as "frame rate, resolution, aspect ratio … audio and video bit rate," *id.* at 21:63-66 (Appx. 99);

formatting requirements, *id.* at 13:55-58 (Appx. 95); or video length parameters or other

constraints, *id.* at 13:36-44 (Appx. 95).

This key inventive concept is incorporated in every independent claim of the '304

and '506 patents. For example, claim 1 of the '304 patent recites:

1. A method performed by data processing apparatus, the method comprising:
   receiving video data from a client computing device at a server system, wherein
      the video data is captured using a camera connected to the client computing
      device in accordance with instructions executed on the client computing
      device, ***wherein the instructions are provided to the client computing device
      by the server system and cause the video data to be captured in accordance
      with predetermined constraints and the predetermined constraints include a
      frame rate defined by the instructions***;
   automatically transcoding the video data, using a server included in the server
      system, into at least one different format based on at least one of user
      credentials associated with a user of the client computing device or attributes
      associated with the video data, wherein at least one format of the transcoded
      video data defines a video file in a format appropriate for inclusion in a linear
      television programming broadcast; and
   uploading the transcoded video data to a distribution server for distribution.

*Id.* at 27:57-28:10 (Appx. 102) (emphasis added). Remaining independent claims 17, 22, and

26 of the '304 patent also incorporate this concept,[7] as do all of the '506 patent's independent

claims (except the predetermined constraints in the '506 patent must include a video length).[8]

---

[7] Independent claims 17 and 22 in the '304 patent each recite, in relevant part, "wherein the user interface is provided in accordance with instructions received from a server system and the instructions cause the content to be captured in accordance with predetermined constraints that include a frame rate defined by the instructions…." *Id*. at 29:27-31; 30:2-6 (Appx. 103).  Similarly, independent claim 26 recites, in relevant part, "one or more servers operable to interact with the user device and to: provide instructions for use by the user device for capturing video data in accordance with predetermined constraints, wherein the predetermined constraints include a frame rate defined by the instructions…." *Id*. at 30:41-46 (Appx.103).

[8] Independent claim 1 of the '506 patent recites, in relevant part, "wherein the instructions are provided to the client computing device by the server system and cause the video data to be captured in accordance with predetermined constraints and the predetermined constraints include a video length defined by the instructions." '506 patent at 28:2-7 (Appx. 142).  Similarly, independent claims 16, 23, and 26 recite, respectively,
- "wherein the user interface is provided in accordance with instructions received from a server system and the instructions cause the content to be captured in accordance with predetermined constraints that include a video length defined by the instructions, with the video length centrally predefined at the server system for a plurality of users…." *Id*. at 29:25-31 (Appx. 143);
- "wherein the user interface is provided in accordance with instructions received from a server system and the instructions cause the content to be captured in accordance with predetermined

The improvements to computer functionality brought about by this key inventive concept parallel the improvements described in a number of Federal Circuit cases declining to find claims abstract. As discussed above, the claims at issue in *Enfish*, *Visual Memory*, *Finjan*, and *Ancora* were directed to software innovations that resulted in improvements in speed, efficiency, effectiveness, or other functionality in a computer system. The above-described inventive concept in the '304 and '506 patents—that instructions provided by the server system impose predetermined constraints on the video-capture process at the user devices—improves computer system functionality in several similar respects.

For example, the inventive concept increases the speed and efficiency of video transcoding at the server system:

> [T]he application [controlling video capture] ***can encode the video into a predetermined format*** to ensure that the video file is ready for transcoding using a predetermined transcoder and predetermined transcoding parameters (or a limited set of predetermined transcoders and/or transcoding parameters). In other words, ***the incoming video file can be transcoded using a predetermined transcoding process without having to interpret the data, develop a transcoding process, edit the video, and/or perform manual processing***…. Such techniques allow received video to be quickly transcoded and can facilitate incorporating captured video into linear programming within minutes of capture.

'304 patent at 11:8-19 (Appx. 94) (emphasis added); *see also id.* at 13:55-58 (Appx. 95) ("By enforcing particular formatting requirements for the video files that are submitted, the video can be ***rapidly transcoded without the need to interpret the received data or to modify the transcoder***." (emphasis added)).

---

constraints that include a video length defined by the instructions, wherein the video length is centrally defined at the server system for a plurality of users…." *Id.* at 30:8-14 (Appx. 143); and

• "one or more servers operable to interact with the plurality of user devices and to: provide instructions for use by the user devices for capturing video data in accordance with predetermined constraints, wherein the predetermined constraints include a video length defined by the instructions, wherein the video length is centrally defined at the one or more servers for the plurality of user devices …." *Id.* at 30:41-48 (Appx. 143).

- 23 -

Similarly, by enforcing predetermined constraints on quality parameters at the user device, the inventive concept improves the speed, effectiveness and functionality of the computer system by ensuring the video received by the server for transcoding will, once transcoded, have the quality necessary for distribution:

> [T]he application can enforce predetermined constraints on the captured video. Such constraints can help ***ensure that the video is in condition to be rapidly transcoded*** for insertion into a linear programming time slot. For example, ***the application can encode the video and accompanying audio data at a sufficient bit rate and resolution, among other things, to ensure that the video file can be transcoded to produce video of sufficient quality to be televised and/or to be distributed on the Internet (i.e., in accordance with minimum quality requirements of the television producer or other distributor)***.

*Id.* at 10:58-11:1 (Appx. 93-94) (emphasis added). Moreover, imposing length and other restrictions on captured video at the user device provides usability, functionality, and speed enhancements for producers or production teams similar to the non-abstract improvements in usability recognized in *Core Wireless* and *Data Engine*:

> By accessing the thin client through that web page and/or by delivering parameters to a locally installed application on the user device, a video length restriction can be enforced ***(i.e., the user can be prevented from capturing or submitting videos that do not comply with the length restrictions)***…. By enforcing length restrictions [at the user device], ***the need to edit the [received] video can be avoided, which can also expedite the process of inserting video into a linear programming sequence***.

*Id.* at 11:26-30, 42-45 (Appx. 99) (emphasis added); *see also id.* at 18:29-38 (Appx. 97) ("This feature eliminates the need of a professional production team to transcode disparate formats of user-generated video files before the team can compile and review the files for inclusion in live or pre-recorded linear television or other programming. This aspect not only make [*sic*] production less expensive for television or movie production teams, it makes … the process simpler, and therefore more likely that a production team will want to include crowd-sourced content in their programming (e.g., television or movie programming).").

Finally, the architectural improvement provided by this key inventive concept— shifting control over the video-capture process from the user devices to the server system to achieve subsequent efficiencies in processing received video at the server system—is similar to the non-abstract improvements in computer architecture recognized in *BASCOM* (individualized filtering at the server that improved system performance) and *Amdocs* (distributed enhancement to architecture reduced burden at central server). As the particular arrangement of elements in the '304 and '506 patents' distributed architecture operate to "achieve an improvement in computer functionality," their respective claims are not directed to an abstract idea. *Amdocs*, 841 F.3d at 1301.

In sum, because this key inventive concept in every independent claim of the '304 and '506 patents is directed to specific improvements in computer functionality rather than "economic or other tasks for which a computer is used in its ordinary capacity," the claims are patent-eligible under § 101. *Enfish*, 822 F.3d at 1336.

### 3. ***Berkheimer* and *Aatrix* preclude dismissal because there is—at the very least—a disputed issue of fact on *Alice* step two.**

Even if claims were found to be directed to an abstract idea in step one, the court must determine, at step two, whether the claims contain an inventive concept that nevertheless renders them patent-eligible. "The second step of the *Alice* test is satisfied when the claim limitations 'involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry."'" *Berkheimer*, 881 F.3d at 1367. But "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Id.* at 1368; *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (patents presumed both valid and patent eligible).

- 25 -

"[T]he Supreme Court [has] recognized that in making the § 101 determination, the inquiry 'might sometimes overlap' with other fact-intensive inquiries like novelty under § 102." *Id.* (quoting *Mayo*, 566 U.S. at 90). But "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art." *Id.* at 1369. "The mere fact that something is disclosed in a piece of prior art, for example, ***does not*** mean it was well-understood, routine, and conventional." *Id.* (emphasis added).

*Aatrix* held that dismissal under Federal Rule of Civil Procedure 12(b)(6) on § 101 grounds is improper where "the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice," leave a question of fact as to whether the claim elements "are well-understood, routine, [or] conventional." 882 F.3d at 1128. Such is the case here for at least three reasons.

*First*, the Proposed Second Amended Complaint (the "SAC," attached as Exhibit 1, pursuant to Local Rule 15.1(b)) contains "concrete allegations … that individual elements and the claimed combination are not well-understood, routine, or conventional activity." *Id.* The SAC contains numerous averments describing the prior art and conventional technologies that enabled users to create and distribute video content, the problems and challenges presented by such technologies (SAC ¶¶ 13-20), the '304 and '506 patents' inventive solutions to these problems (*id.* ¶¶ 21-33), and allegations that the claimed inventions involve more than performance of well-understood, routine, or conventional activities (*id.* ¶ 34). These averments also include "concrete allegations regarding the claimed combination's improvement to the functioning of the computer." *Aatrix*, 882 F.3d at 1128; *see* SAC ¶¶ 23-33. The Federal Circuit has "held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Aatrix*, 882 F.3d at 1126-27 (citing *BASCOM*, 827 F.3d at 1352); *Cellspin Soft*, 927 F.3d at 1317-18 ("As long

- 26 -

as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional … [i]n this case, [Plaintiff] made specific, plausible factual allegations about why aspects of its claimed inventions were not conventional … [t]he district court erred by not accepting those allegations as true."). As the allegations in the SAC, taken as true, establish the individual elements and claimed combinations are not well-understood, routine, or conventional, a disputed fact issue precludes dismissal under Rule 12(b)(6).

Second, as discussed above in Part B.2 with respect to *Alice* step one, the '304 and '506 patent specifications describe the claimed element combinations, and in particular a key inventive element, as improving computer system functionality in a number of ways. Nothing in the patent specifications refers to this key inventive concept as well-understood, routine, conventional, or even known in the prior art. And, as with averments in the SAC, "all factual inferences drawn from the [patent] specification must be weighed in favor of … the non-moving party" on a motion to dismiss under Rule 12(b)(6). *Visual Memory*, 867 F.3d at 1262.

Third, and as further explained in the SAC, Twitter's ill-fated '304 and '506 IPRs are strong evidence that a fact issue exists as to *Alice* step two. *See* SAC ¶¶ 35-44. After a trial on the merits in the '304 IPR, the PTAB found Twitter failed to demonstrate, by a preponderance of the evidence, that the above-described key inventive concept[9] was disclosed by Twitter's propounded prior art. '304 FWD at 13, 16, 25-29 (Appx. 15, 18, 27-31). As this concept is in every independent claim, Twitter failed to demonstrate that any of the challenged claims were

---

[9] "[W]herein the instructions are provided to the client computing device by the server system and cause the video data to be captured in accordance with predetermined constraints and the predetermined constraints include a frame rate defined by the instructions." '304 FWD at 13 (Appx. 15).

unpatentable. *Id.* at 31 (Appx. 33).  Likewise, in the '506 IPR, the PTAB held Twitter failed to demonstrate, by a preponderance of the evidence, that a key inventive concept[10] was "taught or suggested by the prior art." '506 FWD at 13-14 (Appx. 47-48). As this concept was also in every independent claim, Twitter's '506 IPR also failed across the board. *Id.* at 29 (Appx. 63).

Demonstrating an element is "well-understood, routine, and conventional" under *Alice* step two "goes *beyond* what was simply known in the prior art." *Berkheimer*, 881 F.3d at 1369 (emphasis added). It must be proven by clear and convincing evidence; "[t]he mere fact that something is disclosed in a piece of prior art" is not enough. *Id.* Twitter's failure to prove to the PTAB—under the lower preponderance-of-the-evidence standard—that even a single piece of prior art disclosed the key inventive concepts is strong evidence of at least a fact issue on the more rigorous "well-understood, routine, and conventional" test. Other district courts in this Circuit have reached the same conclusion when faced with § 101 challenges to patents that have survived IPR proceedings. *See Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, 362 F. Supp. 3d 370, 379 (E.D. Tex. 2019) ("[T]he Court finds that the PTAB's consistent rejection of patentability challenges as to Claim 14 supports the recognition of a material factual dispute relating to whether the ordered combination of Claim 14 describes well-understood, routine, and conventional activities. Such a material factual dispute would preclude summary judgment under Federal Rule of Civil Procedure 56."); *see also Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2017 WL 5137401, at *8 (E.D. Tex. Nov. 4, 2017) ("The fact that the PTAB concluded that TCL failed to establish that a person of ordinary skill in the art would be motivated to combine computer-based security

---

[10] "[W]herein the instructions are provided to the client computing device by the server system and cause the video data to be captured in accordance with predetermined constraints." '506 FWD at 13 (Appx. 47).

software with the relevant mobile platform technology … suggests that the systems claimed by the '510 patent are not merely conventional applications of computer technology.").

In sum, the SAC, patent specifications, and PTAB rulings in the '304 and '506 IPRs demonstrate—at a minimum—a disputed fact issue exists as to whether key inventive concepts in these patents are "well-understood, routine, and conventional." This fact issue precludes dismissal under Rule 12(b)(6). *See Aatrix*, 882 F.3d at 1130 ("There are factual allegations in the second amended complaint, which when accepted as true, prevent dismissal pursuant to Rule 12(b)(6).").

**C.     Given the Changes in the Law and Facts, VidStream Is Entitled to Amend.**

As explained in Part B, above, the new allegations in VidStream's proposed SAC— including, for example, the recent decisions of the PTAB regarding the '304 and '506 patents—raise genuine issues of fact with respect to this Court's § 101 analysis that preclude summary dismissal under *Berkheimer* and *Aatrix*. Under the decisional structure established in *Aatrix*, therefore, VidStream is entitled to amend and assert these new allegations.

In *Aatrix*, the Federal Circuit overturned dismissal of the plaintiff's patent-infringement claims largely on the basis of proposed allegations in the plaintiff's proffered second amended complaint, rather than the allegations in the then-current complaint. *See Aatrix*, 882 F.3d at 1125, 1126-30 ("The proposed second amended complaint contains allegations that, taken as true, would directly affect the district court's patent eligibility analysis."); *see also 3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 46 (addressing together a Rule 12 motion to dismiss and patent-infringement plaintiff's motion for leave to amend complaint). It went on to hold, therefore, that "it was an abuse of discretion for the district court to deny leave to amend." *Aatrix*, 882 F.3d at 1128.

Following *Aatrix* and *Berkheimer*, other courts—even those dubious about the viability of proposed amendments—have repeatedly upheld plaintiffs' rights to amend to assert new patentability allegations, in accord with those new Federal Circuit precedent*s. See, e.g., Ubiquitous Connectivity, LP v. City of San Antonio*, No. SA-18-CV-00718-XR, 2019 WL 4696421, at *8-9 (W.D. Tex. Sept. 26, 2019); *IPA Techs., Inc. v. Amazon.com, Inc*., 307 F. Supp. 3d 356, 373 (D. Del. 2018); *Talent Broker Tech. LLC v. Musical.ly, Inc*., No. CV 17-08532 SJO (MRWx), 2018 WL 3019912, at *8 (C.D. Cal. Mar. 8, 2018). Despite its "doubts whether the deficiencies in [the plaintiff's] complaint can be cured," one such court said, "the Federal Circuit has made clear that any doubt should be resolved in favor of permitting amendment." *Thunder Power New Energy Vehicle Dev. Co. Ltd. v. Byton N. Am. Corp*., 340 F. Supp. 3d 922, 934 (N.D. Cal. 2018) (citing *Aatrix*, 882 F.3d at 1126-28), *aff'd*., 777 F. App'x 517 (Fed. Cir. 2019); *accord 3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 53 ("[I]n a patent case, it is an abuse of discretion to deny leave to amend at a preliminary stage of the proceedings where the proposed amendments allege facts sufficient to raise an allegation of an inventive concept sufficient to survive a motion under Rule 12.").

The amendments proposed by VidStream were prompted largely by new developments in the law (e.g., *Aatrix* and *Berkheimer*) and the facts (e.g., the PTAB decisions).[11] As noted, such changed circumstances are sufficient to satisfy the "good cause" standard of Rule 16. *See Clapper*, 2017 WL 978098, at *3-4 (newly discovered facts); *In re Enron Corp. Sec., Derivative & ERISA Litig*., 2011 WL 3489524, at *6 (change in the law).

---

[11] VidStream's proposed amendments also include infringement assertions with respect to the '304 and '506 patents that either (1) incorporate allegations from Youtoo's Preliminary Infringement Contentions that were served on August 26, 2016 (less than three months before the Court's Order on Twitter's partial motion to dismiss), or (2) relate to accused products or services introduced by Twitter after the Court's Order issued. *See* SAC ¶¶ 52-72.

VidStream's request for leave to amend satisfies the requirements of Rule 15, as well. Proposed amendments like those here, prompted by changed circumstances, cannot be the product of "undue delay [or] bad faith or dilatory motive on the part of the movant." *Hoffman*, 2012 WL 4321739, at *4. And, because the proposed new allegations demonstrate genuine issues that preclude summary disposition of VidStream's claims, as explained in Part B above, the requested amendment cannot be futile or cause undue prejudice to Defendant. *Id*.

Therefore, VidStream respectfully submits, here as in *Aatrix*, it would be an abuse of discretion to deny leave to amend to file its Second Amended Complaint. *Aatrix*, 882 F.3d at 1126-28.

## IV.    Conclusion

VidStream respectfully urges the Court to grant its motion to reconsider and for leave to amend, allowing it to file its proposed Second Amended Complaint and letting this case proceed to a decision on the merits, taking fully into account the intervening changes in the law and facts after the Court granted partial dismissal.

DATED: March 16, 2020.              Respectfully Submitted,

                                    */s/ Ken Carroll*
                                    Mark C. Howland
                                     Texas Bar No. 24027240
                                     mhowland@ccsb.com
                                    Ken Carroll
                                     Texas Bar No. 03888500
                                     kcarroll@ccsb.com
                                    Steve Levine
                                      Texas Bar No. 12258100
                                      slevine@ccsb.com
                                    Seth Horwitz
                                      Texas Bar No. 24043733
                                      shorwitz@ccsb.com
                                    **CARRINGTON, COLEMAN,
                                     SLOMAN & BLUMENTHAL, L.L.P.**
                                    901 Main Street, Suite 5500
                                    Dallas, Texas 75202
                                    TELEPHONE: (214) 855-3000
                                    FACSIMILE: (214) 855-1333

                                    ***Attorneys for VidStream LLC***


## CERTIFICATE OF CONFERENCE

        The undersigned certifies that he has conferred with counsel for Defendant Twitter, Inc. regarding the foregoing motion and the relief sought by it, and that no agreement could be reached.

                                    */s/ Mark C. Howland*
                                    Mark C. Howland