IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VIDSTREAM, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-00764-N |
| | § | |
| TWITTER, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Twitter, Inc.'s ("Twitter") motion to exclude the expert testimony of Roy Weinstein [344]. Because Weinstein's testimony meets the requirements of Rule 702, the Court denies the motion.

**I. ORIGINS OF THE DISPUTE**

This case arises from the alleged infringement of U.S. Patents No. 8,464,304 and 8,601,506 (collectively, the "Asserted Patents"). The Asserted Patents are directed to a system of receiving and distributing user-generated video content for distribution on television broadcasts and the internet. Plaintiff Vidstream, LLC ("Vidstream"), the successor-in-interest of Youtoo Technologies, LLC ("Youtoo"), alleges that Twitter infringed the Asserted Patents through its video creation and distribution on the Twitter, Vine, and Periscope applications. The long procedural history of this case is well established, *see, e.g.*, *VidStream, LLC v. Twitter, Inc.*, 2022 WL 992743, at *1 (N.D. Tex. 2022), and the Court will not recount it in great depth here.

MEMORANDUM OPINION AND ORDER – PAGE 1

Vidstream retained Roy Weinstein to testify regarding damages. His analysis involves the hypothetical negotiation approach as articulated in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Twitter now moves to exclude Weinstein's testimony. *See* Def.'s Mot. 1 [344].

## II.  LEGAL STANDARD FOR EXPERT TESTIMONY

Under Federal Rule of Evidence 702, a witness must be qualified as an expert by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. A qualified expert may testify if the expert's specialized knowledge will help the trier of fact and (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." *Id*. District courts must determine that expert testimony "is not only relevant, but reliable," and make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid" and "can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592–93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999) (holding *Daubert* principles apply to all types of experts). The focus, however, "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

District courts have broad discretion to determine the admissibility of expert testimony. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). But the rejection of expert testimony is the exception, not the rule. *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2016 WL 9560113, at *3 (N.D. Tex. 2016). And

MEMORANDUM OPINION AND ORDER – PAGE 2

the *Daubert* inquiry may not replace the adversarial system. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). Vigorous "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 250 (quoting *Daubert*, 509 U.S. at 596). Indeed, "while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id.*

### III. THE COURT DENIES TWITTER'S MOTION TO EXCLUDE EXPERT TESTIMONY

Twitter argues that Weinstein's testimony is inadmissible because he (1) did not explain how four documents he relies on are sufficiently comparable to the hypothetical negotiation between Twitter and Youtoo; (2) failed to apportion between the patented and unpatented features of the technology; and (3) used an unreliable methodology for calculating worldwide damages. Def.'s Br. 11–23 [345]. The Court addresses each of these arguments in turn.

#### A. The Documents Weinstein Relies on are Sufficiently Comparable

First, Twitter argues that Weinstein does not offer reasoned analysis showing how four documents he relies on in his *Georgia–Pacific* analysis are sufficiently comparable to the hypothetical negotiation between Twitter and Youtoo. Def.'s Br. 11–18. The documents in question include: (1) an enterprise services agreement between Youtoo and AsiaTV regarding a nonexclusive license of Youtoo's social media features; (2) an executed memorandum of understanding between Youtoo and Verizon regarding a potential license of Youtoo's on-demand and live programming services and other features; (3) an unexecuted memorandum of understanding between Youtoo and Verizon regarding

MEMORANDUM OPINION AND ORDER – PAGE 3

a license of Youtoo's linear television service; and (4) a deal review document prepared by Twitter regarding Periscope, one of the accused products. Weinstein Report ¶¶ 76–82, 140 [346, Ex. 1].[1]

The hypothetical negotiation approach "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). In "attempting to establish a reasonable royalty, the 'licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit.'" *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (quoting *Lucent*, 580 F.3d at 1325). The patentee also may rely on other types of agreements when they are "closely comparable, and the expert expressly addresses the differences between those negotiations and any hypothetical negotiations." *CXT Sys., Inc. v. Academy, Ltd.*, 2020 WL 481080, at *5 (E.D. Tex. 2020) (citing *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1093 (Fed. Cir. 2014)). "Assessing the comparability of licenses requires 'consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation.'" *HOYA Corp. v. Alcon Inc.*, 713 F. Supp. 3d 291, 320 (N.D. Tex. 2024) (quoting *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373

---

[1] The four documents can be found in Twitter's appendix [346]. *See* Def.'s App. 264–289 (first document); 291–303 (second document); 305–309 (third document); 311–330 (fourth document).

MEMORANDUM OPINION AND ORDER – PAGE 4

(Fed. Cir. 2020)); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211–12 (Fed. Cir. 2010)).

First, Weinstein assesses the comparability of the technology covered by the Asserted Patents and the technology involved in the first three documents, noting that although the agreements do not contemplate licenses strictly to the Asserted Patents, they do involve "access to the technology embodied by the asserted patents." Weinstein Report ¶ 76. He based this determination on his own work in the case as well as his conversations with Ryland Reed, co-inventor of the relevant Youtoo technology. *See* Pl.'s App. 104 [349-2]. Regarding the second and third documents, he further based this determination on an email between Reed and Verizon suggesting that the documents relate to negotiations involving the Asserted Patents. Weinstein Report ¶¶ 69–72. Additionally, the fourth document involves Periscope, one of the accused products. *See id.* ¶ 140. And Weinstein explained that the fourth document contemplated costs for "Twitter's own efforts to build and code the application," which would not be appropriate to include in the hypothetical royalty. *Id.* The Court finds that Weinstein sufficiently addresses how the documents are technologically comparable to a license to the Asserted Patents.

Second, the Court determines that Weinstein sufficiently assesses the economic comparability of the documents to the hypothetical negotiation. For example, he explained that "the parties would understand that most of the compensation categories [in the first three documents] would not be appropriate for an established entity such as Twitter." *Id.* ¶ 77. Further, he noted that the first and second documents are useful for comparison

because they "contemplated per-user royalties as a portion of the payment terms," which is "easy to track and to translate to Twitter's business." *Id.*

Third, because all four of the documents were prepared within three years of the agreed hypothetical negotiation date, and none are litigation settlement agreements, the Court finds that the documents arose under comparable circumstances to the hypothetical negotiation. *See, e.g.*, *Bio-Rad Lab'ys*, 967 F.3d at 1373 (expressing concern with using prior settlement agreements to prove amount of reasonable royalty (citing *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 77–78 (Fed. Cir. 2012))).

Accordingly, the Court concludes that Weinstein has adequately addressed the comparability of the four documents and the factors relevant to the hypothetical negotiation. The Court thus denies Twitter's motion to exclude on this ground. Twitter may address its concerns regarding comparability through cross examination and presentation of contrary evidence. *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."); *ActiveVideo Networks, Inc. v. Verizon Comm'cns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the [] license agreements as well as any failure on the part of [the] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion." (citation omitted)).

### B. Weinstein's Methodology for Apportionment is Adequate

Next, Twitter argues that Weinstein failed to adequately apportion the value of the technology of the Asserted Patents. Def.'s Br. 19–23. When, as here, "the accused

MEMORANDUM OPINION AND ORDER – PAGE 6

technology does not make up the whole of the accused product, apportionment is required." *See, e.g.*, *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021) (citing *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018)). Further, the "ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Id.* (quoting *Finjan*, 879 F.3d at 1309). But estimating a reasonable royalty "is not an exact science," and "there may be more than one reliable method for" estimation. *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (citation omitted).

Here, Weinstein described how he accounted for the value attributable to the infringing features of the products. Regarding the first document, he explained that he apportioned the "fee to account for overall system capacity by considering Twitter's claim that not all of its video-upload based traffic employs Youtoo's technology" and adjusted the rate downward by the percent of uploaded video traffic stemming from the in-application camera feature. Weinstein Report ¶ 78. Regarding the second document, Weinstein apportioned the per-user fee based on Twitter's claimed use and adjusted the fee to remove nonmobile users. *Id.* ¶ 79. And regarding the fourth document, he apportioned out the software development costs Twitter would incur. *Id.* ¶¶ 140, 161.

The Court finds that Weinstein's methodology for estimating a reasonable royalty is sound, and the evidence he relied upon sufficicently relates to the case to meet the requirements of Rule 702. *See Bio-Rad Lab'ys*, 967 F.3d at 1376 (There "is no blanket rule of *quantitative* apportionment in every comparable license case."). Accordingly, "the

MEMORANDUM OPINION AND ORDER – PAGE 7

gatekeeping role of the court is satisfied" regarding Weinstein's opinions on apportionment, "and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder." *Summit 6*, 802 F.3d at 1296.

### C. Weinstein's Methodology for Calculating Worldwide Damages is Reliable

Lastly, Twitter asserts that Weinstein's worldwide damages calculation is unreliable and based on insufficient facts and data. Def.'s Br. 23–24. If a patent owner "seeks to increase [the damages] amount by pointing to foreign conduct that is not itself infringing, the patentee must, at the least, show why that foreign conduct increases the value of the domestic infringement itself." *Brumfield v. IBG LLC*, 97 F.4th 854, 877 (Fed. Cir. 2024). Here, Weinstein opined that "Twitter operates a worldwide ecosystem," and content "generated from U.S.-based Twitter applications is shared worldwide and can increase engagement in foreign markets, leading to advertising revenues attributable to those worldwide markets." Weinstein Report ¶ 152. Further, Weinstein understood from Dr. Mark Jones — Vidstream's technical expert — that "Twitter made infringing computer storage media domestically, within the terms of the [Asserted Patents], as part of its process of developing its software, and such development directly led to revenue of its infringing apps for its worldwide user base." *Id.* ¶ 160; *see also* Pl.'s App. 002, 008, 056–57 (explaining the accused apps are made in the United States and support global operation of the infringing features). The Court finds that this is a sufficient basis for Weinstein's worldwide damages calculation and thus denies the motion to exclude on this ground.

## CONCLUSION

Because the Court finds that Weinstein's expert testimony satisfies the requirements of Rule 702, the Court denies the motion to exclude.

Signed February 25, 2025.

_____
David C. Godbey
Chief United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 9