**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

VIDSTREAM LLC,

               Plaintiff,

     v.

TWITTER, INC.,

               Defendant.

Civil Action No. 3:16-cv-00764-N

Judge David C. Godbey

**PLAINTIFF VIDSTREAM LLC'S MOTION FOR ENTRY OF JUDGMENT,
FOR ENHANCED DAMAGES, FOR PRE- AND POST-JUDGMENT INTEREST,
<u>FOR PREVAILING PARTY STATUS, AND FOR COSTS</u>**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 1

    A.   The Court Should Not Enter Judgment Regarding the Superfluous Invalidity
        Findings (Claims 22–24 of the '304 Patent and Claims 23 and 24 of the '506
        Patent). ...................................................................................................... 1

        1.   The Court Has Broad Discretion to Disregard Answers to Questions
            Rendered In Violation of the Court's Instructions, and the Court Should
            Do So Here ....................................................................................... 2

        2.   Twitter Arguments that VidStream Waived—and That Such Alleged
            Waiver Confines the Discretion of the Court—Are Wrong. ...................... 4

        3.   Judgment Is Inappropriate For These Claims For the Additional Reason
            that the Verdict Reflects Only an Affirmative Defense .......................... 6

        4.   There Is Nothing Left to Resolve as to These Claims.  If Any Issue
            Remains, the Court Can Dismiss Any Remaining Invalidity Issue as
            Moot or for Lack of Jurisdiction ....................................................... 8

    B.   The Court Should Enhance Damages for Twitter's Willful Infringement ............... 9

        1.   As to Claim 17, This Case Was Not Close (Factor 5). ........................ 10

        2.   As to Claim 17, There Is No Evidence that Twitter Reasonably Relied
            on Any Non-Infringement or Invalidity Defense (Factor 2) ...................... 13

        3.   The Duration of Twitter's Infringement—Ten Years—Also Supports
            Enhancement (Factor 6). .................................................................. 14

        4.   Twitter's Size and Financial Condition Supports Enhancement
            (Factor 4) ........................................................................................ 14

        5.   Twitter's Behavior as a Party to the Litigation Supports Enhancement
            (Factor 3) ........................................................................................ 15

        6.   Twitter's Failure to Retain Date and False Recitations of Its Redesign
            Reflect Concealment (Factor 9). ......................................................... 17

        7.   Twitter's Copying and Motivation for Harm Favor Enhancement
            (Factors 1 and 8). ........................................................................... 19

        8.   Twitter's Last-Minute Remedial Action Does Not Weigh Against
            Enhancement (Factor 7). .................................................................. 20

    C.   The Court Should Award Prejudgment and Post- Judgment Interest. ................... 21

        1.   The Court Should Award Prejudgment Interest at the Texas Statutory
            Rate, Compounded Annually .............................................................. 21

            (a)   The Court Should Award Prejudgment Interest Using the Texas
                Statutory Rate, Compounded Annually ................................... 21

(b)  Calculatng Interest at the Texas Statutory Rate Is Particularly
Warranted Because There Is Evidence that Twitter's Infringement
Caused Increased Borrowing Costs. ........................................................ 22

(c)  Alternatively, the Court Should Award Interest Using the Prime
Rate, Compounded Quarterly ................................................ 23

2.  The Court Should Award Post-Judgment Interest Under
28 U.S.C. § 1961 ............................................................................. 24

D.  The Court Should Award Costs to VidStream as the Prevailing Party .................. 25

III.  CONCLUSION .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*
694 F.3d 1312 (Fed. Cir. 2012) ................................................................. 13

*Barry v. Medtronic, Inc.*
250 F. Supp. 3d 107 (E.D. Tex. 2017) ....................................................... 15

*Callaway Golf Co. v. Acushnet Co.*
576 F.3d 1331 (Fed. Cir. 2009) ................................................................... 6

*Canon, Inc. v. Color Imaging, Inc.*
292 F. Supp. 3d 1357 (N.D. Ga. 2018) ..................................................... 18

*Carr v. Wal-Mart Stores*
312 F.3d 667 (5th Cir. 2002) ....................................................................... 3

*Electrical Fittings Corp. v. Thomas & Betts Co.*
307 U.S. 241 (1939) ............................................................................... 6, 7

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*
697 F.3d 1342 (Fed. Cir. 2012) ................................................................. 21

*Fire King Int'l LLC v. Tidel Eng'g, L.P.*
613 F. Supp. 2d 836 (N.D. Tex. 2009) ....................................................... 6

*First Commonwealth Bank v. Auto Resource of Tex. LLC*
No. 3:22-cv-374-L, 2022 WL 16964754 (N.D. Tex. Nov. 16, 2022) ...................................... 24

*Flannery v. Carroll*
676 F.2d 126 (5th Cir. 1982) ....................................................................... 8

*Flexuspine, Inc. v. Globus Med., Inc.*
No. 6:15-CV-201-JRG-KNM, 2016 WL 9276025 (E.D. Tex. Oct. 3, 2016) ............................. 7

*Flexuspine, Inc. v. Globus Medical, Inc.*
879 F.3d 1369 (Fed. Cir. 2018) ........................................................... 3, 6, 9

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*
647 F. Supp. 3d 145 (S.D.N.Y. 2022) ....................................................... 20

*Function Media, L.L.C. v. Google, Inc.*
708 F.3d 1310 (Fed. Cir. 2013) ............................................................... 4, 5

*Gen. Motors Corp. v. Devex Corp.*
461 U.S. 648 (1983)...........................................................................................21

*Georgetown Rail Equipment Co. v. Holland L.P.*
867 F.3d 1229 (Fed. Cir. 2017)..........................................................................10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*
No. 2023-1772, 2025 WL 649737 (Fed. Cir. Feb. 28, 2025)...........................23, 24

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*
579 U.S. 93 (2016)...........................................................................................9, 22

*Hannon v. Nevitt*
No. 3:09-CV-66-N, 2013 WL 12290978 (N.D. Tex. Mar. 14, 2013)........................8

*Hansen v. Cont'l Ins. Co.*
940 F.2d 971 (5th Cir. 1991) .............................................................................21

*Harris v. Westchester Fire Ins.*
983 F.2d 231 (5th Cir. 1992) ...............................................................................2

*Hill-Rom Co. v. Kinetic Concepts, Inc.*
209 F.3d 1337 (Fed. Cir. 2000)............................................................................6

*Hoechst Celanese Corp. v. BP Chemicals Ltd.*
78 F.3d 1575 (Fed. Cir. 1996)..............................................................................3

*Kaiser Aluminum & Chem. Corp. v Bonjorno*
494 U.S. 827 (1990)..........................................................................................24

*Kaneka Corp. v. JBS Hair, Inc.*
No. 3:10-cv-01430-P, 2013 WL 12123946 (N.D. Tex. Oct. 24, 2013)..................24

*Laitram Corp. v. NEC Corp.*
115 F.3d 947 (Fed. Cir. 1997).............................................................................23

*Liquid Dynamics Corp. v. Vaughan Co.*
355 F.3d 1361 (Fed. Cir. 2004)............................................................................8

*Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*
No. 6:19-CV-00059-RWS, 2022 WL 4494312 (E.D. Tex. Aug. 18, 2022)............18

*Manderson v. Chet Morrison Contractors, Inc.*
666 F.3d 373 (5th Cir. 2012) .............................................................................25

iv

*Mary Kay Holding Corp. v. Fed. Holding Co.*
No. 3:06-CV-0896-N, 2006 WL 8436966 (N.D. Tex. Nov. 1, 2006) ....................................... 9

*McGowan v. S. Methodist Univ.*
No. 3:18-CV-00141-N, 2024 WL 3891358 (N.D. Tex. Aug. 20, 2024) ................................. 25

*Meaux Surface Protection, Inc. v. Fogleman*
No. H-07-585, 2010 WL 11721638 (S.D. Tex. June 11, 2010) .............................................. 24

*Mercer v. Long Mfg. N. C., Inc.*
665 F.2d 61 (5th Cir. 1982) .................................................................................................... 5

*Mercer v. Long Mfg. N. C., Inc.*
671 F.2d 946 (5th Cir. 1982) .................................................................................................. 5

*Middleberg, Riddle & Gianna v. Adm'rs of Tulane Educ. Fund*
No. 3:10-cv-0352-N, 2012 WL 13102347 (N.D. Tex. Mar. 6, 2012) ................................... 22

*Minshall v. Hartman Equine Reprod. Ctr., P.A.*
No. 4:15-CV-764, 2017 WL 1495077 (E.D. Tex. Apr. 26, 2017) ........................................... 6

*Nat'l Hisp. Circus, Inc. v. Rex Trucking, Inc.*
414 F.3d 546 (5th Cir. 2005) .................................................................................................. 2

*NCS Multistage Inc. v. Nine Energy Service, Inc.*
No. 6:20-cv-00277-ADA, 2023 WL 149071 (W.D. Tex. Jan. 9, 2023) ................................. 24

*Newell Companies, Inc. v. Kenney Mfg. Co.*
864 F.2d 757 (Fed. Cir. 1988) ................................................................................................ 5

*Nickson Indus. v. Rol Mfg. Co.*
847 F.2d 795 (Fed. Cir. 1988) .............................................................................................. 22

*Opticurrent, LLC v. Power Integrations, Inc.*
No. 17-cv-03597, 2019 WL 2389150 (N.D. Cal. June 5, 2019) ............................................ 24

*Packet Intel. LLC v. NetScout Sys., Inc.*
No. 2:16-CV-00230-JRG, 2018 WL 11352445 (E.D. Tex. Sept. 7, 2018) ............................ 14

*Panduit Corp. v. All States Plastic Mfg. Co.*
744 F.2d 1564 (Fed. Cir. 1984) .............................................................................................. 5

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*
35 F.4th 1367 (Fed. Cir. 2022) ............................................................................................. 13

*Portis v. First Nat'l Bank of New Albany, Miss.*
  34 F.3d 325 (5th Cir. 1994) ............................................................................ 8

*Probatter Sports, LLC v. Sports Tutor, Inc.*
  586 F. Supp. 3d 80 (D. Conn. 2022) .............................................................. 14

*Read Corp. v. Portec, Inc.*
  970 F.2d 816 (Fed. Cir. 1992) ............................................................ 9, 10, 18

*Richard v. Firestone Tire & Rubber Co.*
  853 F.2d 1258 (5th Cir. 1988) ........................................................................ 2

*Rideau v. Parkem Indus. Servs., Inc.*
  917 F.2d 892 (5th Cir. 1990) .......................................................................... 2

*Robroy Indus. Inc. v. Schwalbach*
  481 F. App'x 133 (5th Cir. 2012) .................................................................... 2

*Samaad v. City of Dallas*
  922 F.2d 216 (5th Cir. 1991) ........................................................................ 25

*SB IP Holdings LLC v. Vivint, Inc.*
  No. 4:20-cv-00886, 2024 WL 3939545 (E.D. Tex. Aug. 26, 2024) ................ 24

*Schwendimann v. Arkwright Advanced Coating, Inc.*
  959 F.3d 1065 (Fed. Cir. 2020) .................................................................... 22

*SSL Servs., LLC v. Citrix Sys., Inc.*
  769 F.3d 1073 (Fed. Cir. 2014) .................................................................... 25

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*
  665 F.3d 1269 (Fed. Cir. 2012) ...................................................................... 9

*Summit 6 LLC, v. Research in Motion Corp.*
  No. 3:11-cv-367, 2013 WL 12124321 (N.D. Tex. June 26, 2013) ................. 22

*Team Contractors, L.L.C. v. Waypoint Nola, L.L.C.*
  976 F.3d 509 (5th Cir. 2020) ...................................................................... 4, 5

*Truseal Techs., Inc. v. GGK Distribution, LLC*
  No. 3:08-cv-1836-N, 2012 WL 12981759 (N.D. Tex. Mar. 21, 2012) .................. 23

*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*
  819 F. App'x 204 (5th Cir. 2020) .................................................................... 2

*WBIP, LLC v. Kohler Co.*
  829 F.3d 1317 (Fed. Cir. 2016) ............................................................... 13

*White v. Grinfas*
  908 F.2d 1157 (5th Cir. 1987) .................................................................... 2

*Wirtgen Am., Inc. v. Caterpillar, Inc.*
  No. 1:17-CV-00770-JDW, 2024 WL 4216057 (D. Del. Sept. 17, 2024) ................................ 13

**Statutes**

28 U.S.C. 1961 ............................................................................. 24, 25

35 U.S.C. 284 ............................................................................ 9, 20, 21

Tex. Fin. Code 304.003 ......................................................................... 21

**Other Authorities**

Charles Alan Wright & Arthur R. Miller
  9B Federal Practice and Procedure § 2504.1 1 (3d ed. 2008) ..................................... 4

**Rules**

Fed. R. Civ. P. 33(b) ......................................................................... 18

Fed. R. Civ. P. 49(a) ........................................................................ 4, 5

Fed. R. Civ. P. 49(b) ........................................................................ 4, 5

Fed. R. Civ. P. 51 ............................................................................ 3

Fed. R. Civ. P. 52 ............................................................................ 8

Fed. R. Civ. P. 54(d) ........................................................................ 25

Fed. R. Civ. P. 54(d)(1) ..................................................................... 25

## I.     INTRODUCTION

After a decade of infringement, the jury rendered a verdict that Claim 17 of the '304 Patent is valid and infringed—willfully—by Twitter.  The jury also found that Twitter owes VidStream $105,444,153 in unpaid royalties.  It is time for this case to end.  The Court should enter judgment on the verdict.

For the reasons detailed below, the form of the judgment should not include the jury's superfluous findings on invalidity, and Twitter has waived any request to invalidate claims that are not infringed.  The Court should also award enhanced damages for Twitter's intentional infringement.  And the Court should award prejudgment and post-judgment interest, as well as declare VidStream the prevailing party.  In short, the Court should enter judgment on this verdict as proposed in VidStream's Proposed Order.

## II.     ARGUMENT

### A.  The Court Should Not Enter Judgment Regarding the Superfluous Invalidity Findings (Claims 22–24 of the '304 Patent and Claims 23 and 24 of the '506 Patent).

The verdict form was clear: the jury was to answer the Question 2, the invalidity interrogatory, only "for every claim for which you answered to Question No. 1 [regarding infringement] 'yes.'"  Dkt. 446 at 13.  When reviewing this question, the Court made clear that "every claim" was referencing "the asserted claims."  Day 6 Trial Tr. at 27:9–27:12.  Twitter never objected.  Indeed, Twitter knew its submission was conditional, it closed on it: "If you answer no to claim [sic] one, that Twitter did not infringe these claims, you don't have to go to the rest of the verdict form.  You don't have to address invalidity, and you don't have to get to that.  You don't have to get to anything else."  Day 6 Trial Tr. (Mehta) 86:16–86:21.

Despite being instructed to answer for "every claim for which your answered Question No. 1 'yes,'" the jury nevertheless answered the invalidity interrogatory for Claims 22–24 of the

1

'304 Patent and claims 23 and 24 of the '506 Patent despite having answered "no" as to Question No. 1. The Court then polled the jury as to only Claim 17 in Question No. 2 and Question No. 3 (regarding willfulness). Day 7 Trial Tr. at 4:16–5:5. Every juror indicated that the verdict read by the Court into the record—addressing Claim 17 for Interrogatory Numbers 2 and 3 and excluding the other claims—was their verdict. *Id.* at 5:6–5:20. Because the Court polled the jury only on questions that the jury was instructed to answer, VidStream did not object.

1. <u>The Court Has Broad Discretion to Disregard Answers to Questions Rendered In Violation of the Court's Instructions, and the Court Should Do So Here.</u>

Despite the facts above, Twitter has stated it will seek entry of judgment on questions that the jury was instructed not to answer: invalidity on the non-infringed claims. The Court should not do so. The Court has broad discretion to determine whether the answers to the Court's interrogatories are clear. *Harris v. Westchester Fire Ins.*, 983 F.2d 231, 231 (5th Cir. 1992). And "if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review [the appellate court] must ignore the jury's necessarily conflicting answers to any other questions." *Id.* (quoting *White v. Grinfas*, 908 F.2d 1157, 1161 (5th Cir. 1987)). "The subsequent questions are by definition irrelevant in those circumstances, and cannot be used to impeach the jury's clear verdict." *Id.* (quoting *Grinfas*, 908 F.2d at 1161).[1] This well-settled rule applies to verdicts concerning infringement and invalidity generally where the invalidity question is submitted conditionally. Applying Fifth Circuit law, the Federal Circuit has directly addressed

---

[1] *See also Rideau v. Parkem Indus. Servs., Inc.*, 917 F.2d 892, 897 (5th Cir. 1990) ("Because the jury found that Parkem was not negligent, the question in the second interrogatory—whether Rideau was contributorily negligent—is irrelevant."); *Richard v. Firestone Tire & Rubber Co.,* 853 F.2d 1258, 1260 (5th Cir. 1988) (same); *Robroy Indus. Inc. v. Schwalbach*, 481 F. App'x 133, 137 (5th Cir. 2012) (same); *Nat'l Hisp. Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551 (5th Cir. 2005) (same) *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 209 (5th Cir. 2020) (same).

the issue and concluded that a district court is "entitled to find these answers inconsistent and [is] entitled to decline to enter judgment on invalidity." *Flexuspine, Inc. v. Globus Medical, Inc.*, 879 F.3d 1369, 1374 (Fed. Cir. 2018).

The jury's *ultra vires* answers fall squarely within the Court's discretionary authority to disregard. As submitted, the jury's determination that a claim was not infringed was supposed to "terminate further inquiry" on further questions. Twitter did not object to conditioning questions of invalidity on infringement. And as noted above, counsel for Twitter took full advantage of the conditional submission during closing argument—urging the jury to find non-infringement and be done. Twitter cannot now complain about any conditional submission having failed to object to such a submission. *See, e.g., Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) (applying Fifth Circuit law and concluding that Rule 51 objection requirements apply to verdict form).

In fact, giving effect to *ultra vires* answers by entering judgment on them is likely an abuse of the Court's broad discretion. For example, the Fifth Circuit reversed a district court's decision to enter judgment on a conditional question that should not have been reached. *See Carr v. Wal-Mart Stores*, 312 F.3d 667, 674 (5th Cir. 2002). In *Carr*, the jury answered two questions, the second of which they should not have reached. *Id.* at 673–74. In post-trial proceedings, the court "actually gave effect to the jury's answer to interrogatory No. 2" even though it should not have been answered. *Id.* at 674. The Fifth Circuit reversed, observing that—absent polling of the jury—it is "pure speculation" and "tantamount to a bench trial in violation of [the Plaintiff's] right under the Seventh Amendment to a trial by jury" to give effect to questions that should not have been reached. *Id.* at 674–75. The Court should decline to enter judgment on the invalidity answers for claims found not to be infringed.

3

2.  Twitter Arguments that VidStream Waived—and That Such Alleged Waiver
    Confines the Discretion of the Court—Are Wrong.

Twitter has suggested that it is VidStream, not Twitter, who has waived.  Twitter argues

that waiver applies to *any* request that the Court disregard these *ultra vires* findings, contending

that the alleged waiver even limits the Court's own discretion to act.  According to Twitter, the

Court's verdict form on invalidity was a general verdict with written questions governed by Rule

49(b).  Building on its Rule 49(b) position, Twitter then cites *Team Contractors, L.L.C. v.*

*Waypoint Nola, L.L.C.*, 976 F.3d 509 (5th Cir. 2020) to argue that VidStream had to object to

preserve its request that the Court not enter judgment on questions that should not have been

answered.  But in the Fifth Circuit, Twitter is simply wrong.  Rule 49(a) applies to these verdicts.

There are three types of verdicts: a general verdict, a special verdict, and a general verdict

with written questions.  A verdict form can include multiple general verdicts.  Charles Alan

Wright & Arthur R. Miller, 9B Federal Practice and Procedure § 2504.1 1 (3d ed. 2008)

(describing the practice of submitting multiple general verdicts).  That is the case here.  "The

theoretical distinction between general and special verdicts is that general verdicts require the

jury to apply the law to facts, and therefore require legal instruction, whereas special verdicts

compel the jury to focus exclusively on its fact-finding role."  *Id.* § 2503 n.1.  Since questions of

infringement and invalidity require legal instruction and application of law to facts, each are

separate general verdicts.  *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1330

(Fed. Cir. 2013) (recognizing that "[i]t would be impossible for lay juries to determine whether a

claim is anticipated or infringed without some legal instruction").

In this Circuit, multiple general verdicts are not analyzed as a "general verdict with

written questions" under Rule 49(b).  Instead, they are considered submitted under and governed

by Rule 49(a), and there is no requirement to object.  The controlling authority on this point is

*Mercer* where "three separate general verdicts, one for each of three separate theories of liability" were submitted, and the Fifth Circuit on appeal concluded that "the submission was pursuant to [Federal Rule of Civil Procedure] 49(a)." *Mercer v. Long Mfg. N. C., Inc.*, 665 F.2d 61, 65 (5th Cir. 1982). In denying rehearing, the Fifth Circuit observed that "no case in this Circuit" required an objection prior to the release of the jury for verdicts submitted under Rule 49(a). *See Mercer v. Long Mfg. N. C., Inc.*, 671 F.2d 946, 947–48 (5th Cir. 1982). And the Fifth Circuit recently re-affirmed *Mercer* as specifically applicable to this situation: multiple general verdicts. *See Team Contractors, L.L.C.*, 976 F.3d at 518 (acknowledging that "*Mercer* controls" in "only those situations in which a verdict against one party on different claims is expressed in the manner used at the trial in that case, ***i.e., in a form similar to multiple general verdicts***" (emphasis added)). Because the verdict in this case is the form of multiple general verdicts, Rule 49(a) governs, no contemporaneous objection requirement exists, and no waiver applies.[2]

For the sake of completeness, even if the issue were governed by Rule 49(b), waiver is still no bar to the Court's exercise of its broad discretion to refuse entry of judgment on

---

[2] Despite applying Fifth Circuit law for some issues, *Function Media, LLC* concluded that alleged inconsistencies between infringement and invalidity were governed by the contemporaneous-objection rule. While *Function Media* acknowledges the *Mercer* opinion, it does not acknowledge how *Mercer* distinguished between (a) general verdicts with written questions, which are governed by Rule 49(b); and (b) multiple general verdicts, which under *Mercer*, are governed by Rule 49(a).

To the extent *Function Media, LLC* and *Mercer* conflict, this Court is bound to follow *Mercer*. Both Circuits hold that, where precedent conflicts, the earliest precedent controls. *Team Contractors, L.L.C.*, 97 6 F.3d at 518; *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988). As reflected in the recent analysis of *Team Contractors, L.L.C.*, *Mercer* still controls the multiple-general-verdict scenario, and it is the earliest-in-time precedential decision. Moreover, when the Federal Circuit reviews this case, it will "review procedural matters that do not pertain to patent issues"—such as whether multiple general verdicts are governed by Rule 49(a) or (b) and whether any objection is required—"as if [the Federal Circuit was] the particular regional circuit court[.]" *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1575–76 (Fed. Cir. 1984). As *Team Contractors* re-established, *Mercer* remains controlling in the Fifth Circuit, and it does so regardless of *Function Media LLC*.

superfluous answers. *See also Flexuspine*, 879 F.3d at 1374 (reasoning that district court "entitled to find these answers inconsistent and [is] entitled to decline to enter judgment on invalidity" despite lack of contemporaneous objection); *see also Minshall v. Hartman Equine Reprod. Ctr., P.A.*, No. 4:15-CV-764, 2017 WL 1495077, at \*2–\*3 (E.D. Tex. Apr. 26, 2017) (disregarding superfluous answers despite assertion of waiver).[3]

3. Judgment Is Inappropriate For These Claims For the Additional Reason that the Verdict Reflects Only an Affirmative Defense.

Regardless of the form of the verdict, judgment on the jury's *ultra vires* answers is also inappropriate because those findings clearly reflect only resolution of an affirmative defense. Where a court enters judgment of non-infringement, any factual findings related to an affirmative defense become moot, and a patentee is entitled to have them excluded from the judgment. *See Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939) (holding that petitioner was "entitled to have this portion of the decree [related to invalidity of a non-infringed claim] eliminated" given that, after the finding of non-infringement, the validity determination "was immaterial to the disposition of the cause"); *Hill-Rom Co. v. Kinetic Concepts, Inc.,* 209 F.3d 1337, 1344 (Fed. Cir. 2000) (approving court's decision not to enter judgment related to invalidity of non-infringed claims). *Accord Fire King Int'l LLC v. Tidel Eng'g, L.P.*, 613 F. Supp. 2d 836, 843–44 (N.D. Tex. 2009) (denying as moot affirmative defense of invalidity).

---

[3] Any objection requirement should also be excused given the specific circumstances. The Court read the non-infringement verdicts as to each claim but only Claim 17 as to invalidity and willfulness, Day 7 Trial Tr. at 4:16–24, and VidStream understood that to mean that the Court had already decided to disregard the *ultra vires* answers. In these circumstances, if any contemporaneous-objection requirement existed, the Court can excuse it. *See Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009) (affirming decision to find no waiver where opposing counsel had made similar objection).

Here, Twitter engaged in the following conduct reflective of a knowing submission of invalidity as an affirmative defense. *First*, it acquiesced in a conditional submission of the question. A conditional submission is inconsistent with invalidity as a counterclaim. *Flexuspine, Inc. v. Globus Med., Inc.*, No. 6:15-CV-201-JRG-KNM, 2016 WL 9276025, at *5 (E.D. Tex. Oct. 3, 2016) ("The mere possibility that invalidity would never be decided by the jury in the event of a non-infringement finding is . . . incompatible with submission as an independent counterclaim."). *Second*, it closed on the fact that invalidity was a conditional submission. This is both inconsistent with invalidity as a counterclaim and also proves that the conditional verdict form was Twitter's intentional choice. *Id.* (describing "strategic benefit" from similar conduct). *Third*, it presented invalidity based on *VidStream's* claim scope—filled with allusions to "goose and gander" arguments. *See* Day 5 Trial Tr. (Almeroth) at 192:6–11, 212:7–212:21, 212:25–213:17; *see also id.* at 70:17–70:25. This is inconsistent with invalidity as a counterclaim. *Fourth*, Twitter described its position only as an affirmative defense in the Pre-Trial Order: it contended invalidity *only* based on *VidStream*'s proposed claim scope. *See* Dkt. 413 ¶¶ 20–21.

In these circumstances, "the only reasonable presumption the Court can draw is that the parties . . . submitted the issue of invalidity to the jury only as an affirmative defense . . . ." *Flexuspine, Inc.*, 2016 WL 9276025, at *5. The jury's verdict as to these claims, if it reflects anything, reflects only resolution of that defense. Given that it reflects only findings related to an affirmative defense, judgment is inappropriate on the findings under *Electrical Fittings.*

Twitter has also suggested that it tried invalidity as a counterclaim based on "implied consent." Given the verdict form submitted without objection, Twitter's closing argument, Twitter's PTO description, and Dr. Almeroth's testimony at trial, Twitter's position that it tried

7

invalidity as a counterclaim rather than as an affirmative defense to the jury by "implied consent" borders on frivolous.  At a minimum, Twitter's evidence on invalidity was just as consistent with an affirmative defense submission as it was a counterclaim submission.  If evidence overlaps with pleaded issues, there is no implied consent.  *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 332 (5th Cir. 1994).  Further, any implied consent issue was also jettisoned by Twitter's conditional submission of invalidity, which is incompatible with submission as an independent counterclaim.

> 4.  <u>There Is Nothing Left to Resolve as to These Claims.  If Any Issue Remains, the Court Can Dismiss Any Remaining Invalidity Issue as Moot or for Lack of Jurisdiction.</u>

Twitter also suggests even if it did submit the case as an affirmative defense, the Court must still resolve its counterclaim under Rule 52.  Twitter is wrong.  As discussed, Twitter's own description of its invalidity case highlights that Twitter submitted its case as only an affirmative defense.  *See* Dkt. 413 ¶¶ 20–21.  Twitter's previous invocation of a counterclaim that "one or more claims" were invalid, Dkt. 216 at 19–20, no longer existed at the time of trial.  *See Hannon v. Nevitt*, No. 3:09-CV-66-N, 2013 WL 12290978, at *3 (N.D. Tex. Mar. 14, 2013) (Godbey, J.) ("The pretrial order, however, trumps the complaint.").  And if Twitter argues otherwise, the Court has broad discretion in interpreting the PTO, *id.* at *3, and "district courts are encouraged to construe pre-trial orders narrowly without fear of reversal," *Flannery v. Carroll,* 676 F.2d 126, 129 (5th Cir. 1982).  Twitter waived any counterclaim.

To the extent any counterclaim remains, the Court need not and should not resolve it.  The Court has discretion to dismiss any unresolved counterclaim for which it has found non-infringement.  *See Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004).  In these circumstances, where an accused infringer waived its right to a jury trial on the counterclaim, the Court can simply dismiss any remaining counterclaim without prejudice upon

entry of the non-infringement verdicts. *Flexuspine, Inc.* 879 F.3d at 1374. Exercising

jurisdiction over any remaining declaratory judgment seeking to invalidate these claims in these

circumstances does not further the purpose of the Declaratory Judgment Act. *See, e.g.*, *Mary*

*Kay Holding Corp. v. Fed. Holding Co.*, No. 3:06-CV-0896-N, 2006 WL 8436966, at *2 (N.D.

Tex. Nov. 1, 2006) (Godbey, J.) (noting "unique and substantial discretion" district courts have

to decide whether to decide DJ actions). This is particularly true here, given that there is no

reason to suspect that Twitter will release new features that may not be covered by the current

non-infringement verdict, thereby depriving the Court of jurisdiction for lack of case-and-

controversy. *See, e.g.*, *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1283 (Fed.

Cir. 2012) (noting that counterclaim declaratory judgment plaintiff must show the continued

existence of a case and controversy throughout the case regarding dropped or withdrawn claims).

Thus, the Court likely also has no power to rule on any remaining counterclaim, and it can be

dismissed for lack of jurisdiction as well.

### B. The Court Should Enhance Damages for Twitter's Willful Infringement.

Under Section 284, district courts are empowered "to punish the full range of culpable

behavior," *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 106 (2016), with

authority to enhance damages up to three times the damages award. 35 U.S.C. § 284. The jury

returned a verdict that Twitter intentionally infringed. Dkt. 446 at 24–25. In other words, the

jury found finding that Twitter had acted in a way that typically warrants significant

enhancement. Such infringement is precisely the type of "egregious" conduct that the Supreme

Court recognized as reason for enhancing damages. *Halo*, 579 U.S. at 103 (listing "deliberate"

infringement as "the sort of conduct warranting enhanced damages").

In determining what amount of enhancement is appropriate, courts typically consult the

*Read* factors, which are nine, nonexclusive factors articulated in *Read Corp. v. Portec, Inc.*, 970

F.2d 816 (Fed. Cir. 1992). *See Georgetown Rail Equipment Co. v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017) (recognizing that enhancement continues to be evaluated under the *Read* factors). The *Read* factors are: (1) whether the infringer deliberately copied the ideas of design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of defendant's misconduct; (7) any remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. *Read*, 970 F.2d at 826–27. Consideration of the totality of the circumstances, including these factors, compels the conclusion that significant enhancement is appropriate in this case.

    1. <u>As to Claim 17, This Case Was Not Close (Factor 5).</u>

The infringement and invalidity issues as to Claim 17 were not close. As to infringement, Twitter presented only two non-infringement positions regarding this claim. As reflected by the jury's willfulness infringement verdict, neither of these positions presented a close call.

*Infringement Argument No. 1 – More than One Server System.* First, Twitter alleged that the instructions of the Twitter app were received from a different server system than "storage server" to which the video data is transmitted as recited in the claims. But this non-infringement position was nothing more than re-writing the claims to include a requirement that "the instructions" are "received [directly] from a server system." No such direct requirement exists in the actual claim language. As Dr. Jones thoroughly explained, the software instructions that make up the Twitter app are received from Twitter's server system. Day 2 Trial Tr. (Jones) at 155:22–156:6, 207:20–208:7; Day 3 Trial Tr. (Jones) at 8:25–10:7. The mere fact that the

10

instructions are downloaded from servers from the Apple App Store or the Google Play store does not negate the fact that the Twitter application is received from Twitter. Indeed, when the Court questioned whether "the code for the app at the app store came from Twitter," Dr. Almeroth obviously could not not disagree; he acknowledged that the code "was stored on Twitter's servers for a period of time." Day 5 Trial Tr. (Almeroth) at 207:10–17. *See also* Day 3 Trial Tr. (Lohner) at 246:11–14.

*Infringement Argument No. 2 – Not "Controlling" the Camera.* Twitter's other non-infringement position as to this claim was no better. Twitter alleged that, despite including source code setting a frame rate, the instructions in the Twitter app did not "cause the content to be captured in accordance" with a frame rate because it could not "control" the hardware. *See*, *e.g.*, Day 1 Trial Tr. (Martens) at 76:4–14 ("[T]his claim requires control, control over how you capture and format video . . . Twitter's in-app camera doesn't control the hardware on your phone."). This issue was not close. At trial, Twitter's "control" argument was flattened when Dr. Almeroth was confronted with how he wrote, in his own report, that software instructions in apps "can control the behavior of the phone and its features, such as how the phone's camera captures video." Day 5 Trial Tr. (Almeroth) at 138:3–11. Android's developer documents also indicates that "the function Twitter uses . . . controls the rate of preview frames." *Id.* at 140:15–23. Twitter's "control" argument was also undermined by Mr. Fred Lohner, who was reminded of his deposition testimony that Twitter "directly talks to the operating system's APIs" to "actually control the camera and microphone hardware." Day 3 Trial Tr. (Lohner) at 184:2–16.

*Invalidity.* Twitter's invalidity case was also not close. Twitter filed inter partes review proceedings against Claim 17 of the '304 Patent and lost on the merits. In district court, Twitter lost its primary defense, lack of subject matter eligibility, on summary judgment, and it

abandoned its written description defense on the eve of trial. The remnant—the invalidity case that Twitter presented to the jury—was deeply flawed.

Twitter's defense focused primarily on anticipation: Dr. Almeroth relied on an alleged implementation of two separate systems, FMLE and Wowza, that Twitter and Dr. Almeroth (incorrectly) called "the Covell System" at trial. The only actual evidence regarding Covell's "implementation" of FMLE and Wowza is Mr. Covell's personal use of Adobe FMLE with Wowza or experiments with "test environments." Day 4 Trial Tr. (Covell) at 219:12–18. It is undisputed that Mr. Covell never distributed FMLE—and therefore never distributed any combination of FMLE and Wowza—to anyone. Day 5 Trial Tr. (Almeroth) at 208:15–17 ("So he would say *go and get FMLE* and *go and get Wowza* . . . ." (emphasis added)); *see also id.* at 209:3–10 (describing only "you could click on the website, it would take you to Adobe" as any evidence of Mr. Covell "distributing" FMLE). As such, there was no evidence that any application had instructions that were received from the same server system that stores the video as required by the claim. And while Dr. Almeroth tried to patch up Twitter's theory by telling the Court that "Ensemble is code that [Mr. Covell] wrote to stick [FMLE and Wowza] together," *id.* at 204:24–205:2, he ultimately acknowledged there was no code to stick FMLE and Wowza together. *Id.* at 208:12–17. As Mr. Covell testified, FMLE was just "one of the tools that people could use," Day 4 Trial Tr. (Covell) at 207:20–208:3, and his software was "agnostic as to which tool you would use to create or stream with." *Id.* In short, the "Covell System" theory fell apart because it neither met the requirements of the claim nor was a single system.

Dr. Almeroth's testimony on obviousness standard added nothing significant. The entirety of Dr. Almeroth's testimony was an assertion that a person of ordinary skill "would have" been motivated to solve "any of those kind of differences"—i.e., the claim limitations that

VidStream identified as missing from the combination of FMLE and Wowza. Day 5 Trial Tr.
(Almeroth) at 71:1–71:11. Not only did his testimony use impermissible hindsight, but it also
ignored the factual record that a person of ordinary skill, Mr. Covell, was deliberately "agnostic"
about how video was captured. Moreover, Dr. Almeroth's testimony was so conclusory that it
was not even substantial evidence to support a finding if the jury had accepted it. *See
ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012)
(affirming JMOL of non-obviousness based on similarly conclusory testimony). In sum, the
issues of infringement and validity were not close, and this favors enhancement.

 2. <u>As to Claim 17, There Is No Evidence that Twitter Reasonably Relied on Any Non-Infringement or Invalidity Defense (Factor 2).</u>

 Twitter's lack of adequate investigation into infringement of Claim 17 also supports
enhancement. The evidence at trial showed that Twitter was aware of the '304 Patent. *See, e.g.*,
Day 2 Trial Tr. (Reed) at 50:18–51:2, 53:14–54:2; 58:24–59:10, 60:7–15, 68:11–20, 77:6–11,
78:11–22. Meanwhile, there was no evidence that Twitter formed any good-faith belief of either
non-infringement or invalidity prior to the filing date of the lawsuit. *See Wirtgen Am., Inc. v.
Caterpillar, Inc.*, No. 1:17-CV-00770-JDW, 2024 WL 4216057, at *18–*19 (D. Del. Sept. 17,
2024) (concluding that factor weighed in favor of enhancement, even in case that "has been a
close one," where there was no evidence of pre-suit investigation); *Pavo Sols. LLC v. Kingston
Tech. Co., Inc.*, 35 F.4th 1367, 1378 (Fed. Cir. 2022) (rejecting reliance on conduct in an IPR as
"irrelevant to the issue" of intent because it "came later"). Accordingly, this factor favors
enhancement. *See also WBIP, LLC v. Kohler Co.,* 829 F.3d 1317, 1340 (Fed. Cir. 2016)
(reasoning that litigant cannot "insulate itself from liability for enhanced damages by creating an
(ultimately unsuccessful) invalidity defense for trial").

Moreover, the few temporary battles that Twitter won in litigation do not justify withholding significant enhancement. This litigation spanned a decade. While Twitter received a favorable ruling against the patents for subject matter eligibility, Twitter could not have reasonably believed that that ruling would forever shield Twitter from the consequences of its infringement. Twitter was and is a sophisticated company represented by sophisticated counsel who must have recognized that the Court's original ruling was made when the state of the law for subject matter eligibility was very much in flux. Twitter's conduct seems to confirm this, as Twitter also tried to invalidate the claims in IPR proceedings. In any event, Twitter infringed for an additional five years after losing its IPRs and for four years after the Court reconsidered its original subject matter eligibility ruling. For these long stretches of infringement, Twitter has nothing to point to—not even small rulings or temporary victories—that it could have reasonably relied on to think that it would never have to take responsibility for its infringement.

In sum, this factor weighs in favor of enhancement.

3. The Duration of Twitter's Infringement—Ten Years—Also Supports Enhancement (Factor 6).

Twitter infringed Claim 17 for an entire decade—from 2015 to 2025—completely removing frame rate enforcement only on the Thursday before trial. This long period of infringement weighs in favor of enhancement. *Probatter Sports, LLC v. Sports Tutor, Inc.,* 586 F. Supp. 3d 80, 118 (D. Conn. 2022) (collecting cases).

4. Twitter's Size and Financial Condition Supports Enhancement (Factor 4).

Twitter's size and financial condition also weighs in favor of enhancement. This factor weighs in favor of enhancement where a party's size and financial condition requires enhancement to sufficiently deter wrongful conduct. *See, e.g.*, *Packet Intel. LLC v. NetScout Sys., Inc.*, No. 2:16-CV-00230-JRG, 2018 WL 11352445, at *5 (E.D. Tex. Sept. 7, 2018),

*vacated on other grounds*, 965 F.3d 1299 (Fed. Cir. 2020); *see also Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 116 (E.D. Tex. 2017) (weighing factor in favor of enhancement based on size of infringer). Twitter's size clearly weighs in favor of enhancement. Twitter is and has been a highly successful company most recently valued at $33 billion dollars. Appx0001. A significant enhancement is necessary to deter Twitter and other large companies from using their vast resources to wage protracted litigation as a way to avoid taking a license to patented technology.

    5.  Twitter's Behavior as a Party to the Litigation Supports Enhancement (Factor 3).

    Twitter's conduct throughout this litigation also shows that significant enhancement is warranted. Twitter litigated in a manner designed to drive up Youtoo and VidStream's costs, make VidStream's case more difficult to prove, and force these patents to be defended against an unnecessarily aggressive defense. Some of this conduct is highlighted below.

    *Destruction of Data and Attempted Use of Its Own Destroyed Documents to Minimize Liability.* As the Court is aware, Twitter failed to retain significant data about the accused features, including the Periscope and Twitter Live features that infringed Claim 17. Dkt. 376-2 at App.140; DTX-274. It is hard to imagine any valid justification for Twitter's conduct given that Twitter failed to retain this data while the case was pending. A party to litigation cannot simply destroy relevant information based on an alleged belief that it would ultimately prevail. Worse, after VidStream elected not to move for any spoliation instruction, Twitter repeatedly sought to gain advantage from its own improper failure to retain this information. For example, Twitter cross-examined VidStream's damages expert about his choice to use the little data that Twitter preserved from May 2024 in his damages analysis. Day 3 Trial Tr. (Weinstein) at 86:20–88:20; *see also id.* at 148:19–149:5; *see also* Day 5 Trial Tr. (Almeroth) at 10:22–11:7 (relying on the little data that Twitter preserved to argue that the infringement is unimportant).

*Twitter's Invalidity Case Contradicted Its Unequivocal Representations to the Court.*
While Twitter failed to present much of its invalidity case, it managed to do something that it promised the Court it would not do: Twitter relied on Ensemble Video as invalidating prior art. In asking for leave, Twitter represented to the Court that "Twitter does not seek to assert . . . Ensemble Video as [an] invalidating prior-art reference[] or rely on [it] as part of an obviousness combination," and that it would use it only to "demonstrate the functionality of [FMLE and Wowza] and provide evidence of a motivation to combine." Dkt. 319 at 6–7. Yet at trial, Twitter used Ensemble Video as (false) evidence that a single system combining the FMLE and Wowza systems existed. *See* Day 5 Trial Tr. (Almeroth) at 204:24–205:2 ("The Ensemble is code that he wrote to stick those two together so that his users wouldn't have to go through that effort? The Witness: Yes."); *see also id.* at 206:4–11; 204:14–205:2 (testimony from Dr. Almeroth that there was an "actual implementation" of FMLE and Wowza that was "marketed as Ensemble with additional software" that Covell "distributed . . . to his users"). This contradicted Twitter's representation, and it was false because Mr. Covell never distributed FMLE and because his system was agnostic to how video was captured.

*Twitter Forced VidStream to Prepare for a Bogus Ownership Defense that Twitter Did Not Intend to Pursue.* Twitter also unnecessarily increased costs by questioning VidStreams legal title but then abandoning the issue by trial. *See, e.g.*, Dkt. 397-2 at 24 (Twitter's Verdict Form). Twitter maintained this defense through the pre-trial despite not identifying *any* disputed fact about the chain-of-title. Dkt. 381-1 at 4–5. This "defense" was not legitimate; it was designed to distract from preparation on the merits as well as a false pretext for admission of prejudicial evidence. Dkt. 389 at 8–9; 13–16.

*Twitter's False Discovery Responses and Inadequate Discovery Disclosures Weigh in Favor of Enhancement.*  As established at trial, Twitter also repeatedly stated facts incorrectly in its discovery responses.  Day 3 Trial Tr. (Lohner) at 196:22–197:19, 250:12–22.  This included falsely representing that a frame rate enforcement mechanism had been removed when that infringing functionality remained in at least the Android version of the application for months.  Rather than own its mistake, Twitter tried to shift the blame to VidStream and Dr. Jones, saying that they should have been the ones to figure out that Twitter had served false interrogatory responses about Twitter's failed removal of the frame rate enforcement feature.[4]

*Other Litigation Misconduct.*  Twitter regularly engaged in discovery tactics that were beyond garden-variety discovery disputes.  It withheld disclosure of witnesses with knowledge for as long as possible.  Dkt. 300 at 3–4 (describing Twitter's disclosure conduct).  Without seeking leave, it further demanded that it be allowed to present a witness, Mr. Keith Coleman, never disclosed during fact discovery.  Dkt. 384.  It affirmatively relied on a Duck Duck Goose test as indicating a lack of importance after fact discovery in a rebuttal expert report after previously alleging that DDG tests were irrelevant to the case.  *Id.* at 3–4.

A significant enhancement is necessary to encourage Twitter and other large companies to at least hold themselves to a higher standard if they choose litigation over licensing.

6.  <u>Twitter's Failure to Retain Date and False Recitations of Its Redesign Reflect Concealment (Factor 9).</u>

Evidence that an infringer tried to cover up its infringement supports enhancement.  This is so regardless of whether the attempted coverup is successful.  *Canon, Inc. v. Color Imaging,*

---

[4] Day 2 Trial Tr. (Jones) at 252:4–9 ("Q. And you were given notice of those changes in January, right?  A. Yes.  Q. And you chose not to look at the source code between January, when you were first made aware of those changes, and last Thursday, right?").

*Inc.*, 292 F. Supp. 3d 1357, 1369 (N.D. Ga. 2018) (this factor "focuses solely on whether Defendants *attempted* to conceal their infringement, not whether they successfully did so").

First, it is undisputed that Twitter failed to preserve records related to usage data regarding the accused features, Periscope and Twitter Live.  Twitter produced only a subset of the data related to the infringing feature from 2022 to 2024.  *See, e.g.*, DTX-274.  Twitter deleted data from 2015 to 2022, and it preserved no such data for Periscope.  The *Read* court, itself, recognized that a parties' "fail[ure] to preserve its records" is concealment.  *See* 970 F.2d at 827.

Second, Twitter's conduct related to its redesign also constitutes evidence of attempted concealment.  For this factor, even slight changes like removing descriptions from a website are sufficient to favor enhancement.  *See Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*, No. 6:19-CV-00059-RWS, 2022 WL 4494312, at *8 (E.D. Tex. Aug. 18, 2022).  What happened in this case is much more flagrant.  Leading up to trial, Twitter represented that it had removed the functionality that VidStream pointed to as infringement related to frame rate predetermined constraint requirements.  Day 3 Trial Tr. (Lohner) at 205:10–20.  This was false.  *Id.* at 205:21–23.  Worse, Twitter did not fess up to the inaccuracy of its representations until *after* Dr. Jones has inspected the Android source code mere days before trial—suggesting that Twitter only revealed its misstatement when it was concerned that it could no longer hide the truth.  Day 3 Trial Tr. (Jones) at 7:21–8:24.[5]  This factor weighs in favor of significant enhancement.

---

[5] Mr. Lohner testified that he discovered the issue *before* Dr. Jones inspected the code.  But this is simply too much of a coincidence to be credible.  Day 3 Trial Tr. (Lohner) 207:6–17.  Mr. Lohner suggested that he discovered the error on Thursday morning (before Dr. Jones inspected on Thursday afternoon) because Mr. Lohner intended to be particularly careful to ensure he knew the facts given that he was under oath.  *Id.* at 207:17–24.  But Twitter's false interrogatory response which relied on him is also required to be under oath.  *See* Fed. R. Civ. P. 33(b).  Twitter also

*(continued on next page)*

7.  <u>Twitter's Copying and Motivation for Harm Favor Enhancement (Factors 1 and 8).</u>

There is also sufficient evidence to show both copying and a motivation for harm.  The evidence at trial showed that Twitter was aware of the '304 Patent, and it analyzed Youtoo's technology.  *See, e.g.*, Day 2 Trial Tr. (Reed) at 50:18–51:2, 53:14–54:2, 54:11–18, 55:11–19, 58:24–59:10, 60:7–15, 68:11–20, 77:6–11, 78:11–22, 124:24–125:11.  Only after Youtoo identified its patent portfolio and shared its patented technology did Twitter release the features that infringed Claim 17 of that patent (Periscope and Twitter Live).  Day 2 Trial Tr. (Reed) at 52:12–15, 53:5–16; Day 3 Trial Tr. (Weinstein) at 101:6–8.  The jury also heard evidence that Twitter regularly developed features internally that were the same as features it had seen out in the marketplace or from its potential partners.  Day 4 Trial Tr. (Plom) at 13:14–19; *id.* (Bain) at 107:7–13, 114:22–115:23, 116:7–117:12; PTX-032.  And the jury saw evidence that Twitter had evaluated how quickly it could replicate technology that it had seen.  PTX-037.  Although there is no direct evidence of copying—naturally, no Twitter witness confessed—this is ample circumstantial evidence that Twitter saw Youtoo's technology, liked it, and copied it.

There is also evidence to suggest that Twitter has a motivation to harm both Youtoo and VidStream.  Twitter's litigation conduct has otherwise been irrationally aggressive.  Even when this case was young, Twitter opposed basic amendments to contentions to address newly released products, Dkt. 52, and it sought to hold Youtoo in contempt based on alleged discovery violations, Dkt. 97, all the while stonewalling discovery on its own related to the same issues. Dkt. 90.  This hyper-aggression occurred against a troubling backdrop: Twitter knew that Youtoo was in a dire financial situation as Youtoo had already tried selling its patents.  Day 2 Trial Tr.

---

nowhere explains how Mr. Lohner's testimony is credible where Twitter did not implement a fix until the next day, Friday April 4, 2025, and Twitter had previously indicated in the same discovery response that the change takes only an hour to implement.

(Reed) at 114:17–116:17; PTX-0027.0002.  And Twitter did not withhold its aggression even when its efforts landed Youtoo in bankruptcy; instead it sought to collect its own attorneys' fees from what remained.  *See* Day 2 Trial Tr. (Reed) at 83:11–18; *see also* PTX-060; PTX-101.  The timing and nature of Twitter's aggression suggests that it was trying to strain Youtoo's resources in a way that ultimately led in part to its bankruptcy—and that this was Twitter's aim.

8. <u>Twitter's Last-Minute Remedial Action Does Not Weigh Against Enhancement (Factor 7).</u>

Twitter's eve-of-trial change of its products does nothing to lessen its culpability.  *See Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 265 (S.D.N.Y. 2022) (weighing lack of remedial action in favor of enhancement despite accused infringer's cessation of infringement after *Markman* hearing).  As shown at trial, Twitter's change only occurred at the last moment: after the close of fact and expert discovery as a trial stunt.  Worse, it inaccurately recounted its change until it realized its error had been discovered.  This is not a circumstance in which Twitter acted quickly when its infringement came to light.  Instead, the jury's verdict reflects Twitter's intentional infringement for a decade that stopped not to remedy its behavior but instead for trial optics—to argue that the accused features are unimportant.  Twitter's last-minute remedial action does not make enhancement less appropriate in this case.

\* \* \*

The Court has wide discretion in increasing damages under 35 U.S.C. § 284.  VidStream asks that the Court honor the jury's willfulness verdict, consider the *Read* factors, and award a significant enhancement against Twitter for its willful infringement.

### C. The Court Should Award Prejudgment and Post-Judgment Interest.

1. <u>The Court Should Award Prejudgment Interest at the Texas Statutory Rate, Compounded Annually.</u>

An award of prejudgment interest "is the rule, not the exception." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012). "[P]rejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Courts award prejudgment interest as a rule out of recognition that a patent owner's damages from infringement are not just the total value of the unpaid royalty payments "but also of the forgone use of the money between the time of infringement and the date of the judgment." *Id*. at 656.

(a) *The Court Should Award Prejudgment Interest Using the Texas Statutory Rate, Compounded Annually*

VidStream requests that the Court calculate prejudgment interest at the Texas statutory rate, compounded annually. That rate is calculated using the prime rate, but with a 5% floor and 15% ceiling. *See* TEXAS FINANCE CODE § 304.003.[6] It is appropriate to use this rate here. This is a federal question case so federal law governs prejudgment interest. *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 983 (5th Cir. 1991) *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). But where the federal statute "is silent on the issue of prejudgment interest . . . it is appropriate for the district court to look to state law for guidance in determining the interest rate." *Id*. at 984. Thus, this Court has awarded prejudgment interest at the Texas statutory rate where, like § 284, the federal statute was silent. *See Middleberg, Riddle & Gianna v. Adm'rs of Tulane Educ. Fund*, No. 3:10-cv-0352-N, 2012 WL 13102347, at *5, n.8 (N.D. Tex.

---

[6] For a most of Twitter's infringement, there is no difference between the prime rate and the Texas statutory rate. Appx0007, Ex. 1, Col. 2. But the sub-5% years are the more important ones as those were years in which Youtoo incurred borrowing costs at much higher rates. *Id.*

Mar. 6, 2012) (awarding prejudgment interest under Tex. Fin. Code § 304.003). And other courts in this district have applied this rate in previous patent cases. *See, e.g., Summit 6 LLC, v. Research in Motion Corp.*, No. 3:11-cv-367, 2013 WL 12124321, at *16 (N.D. Tex. June 26, 2013). Moreover, decisions to use state statutory rates are routinely affirmed.[7]

    "Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment." *Nickson Indus. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988). Here, that is the date Periscope was first released: March 26, 2015. Day 2 Trial Tr. (Jones) at 152:19–25; PTX-1017-10. Accordingly, VidStream's damages expert, Mr. Weinstein, calculated prejudgment interest using the Texas statutory rate compounded annually from March 26, 2015 through May 14, 2025, resulting in $79,768,233 for prejudgment interest. Appx0004, Weinstein Decl. ¶ 5 and Ex. 1. Based on the current rate of 7.50 percent, prejudgment interest will continue to accrue at $38,057 per day from May 15, 2025 through the date that judgment is entered. *Id*.

        *(b) Calculatng Interest at the Texas Statutory Rate Is Particularly Warranted Because There Is Evidence that Twitter's Infringement Caused Increased Borrowing Costs.*

    In calculating prejudgment interest, district courts have "wide latitude in the selection of interest rates," and the Federal Circuit has "permitted the use of statutory rates set by states, U.S. Treasury bill rate, and the prime rate." *Schwendimann*, 959 F.3d at 1076 (internal quotations omitted). Some courts have used the Treasury Bill rate absent evidence that the patentee "borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [defendant's]

---

[7] *Schwendimann v. Arkwright Advancing Coating, Inc.*, 959 F.3d 1065, 1076 (Fed. Cir. 2020) (affirming prejudgment interest at 10% pursuant to Minnesota statute and collecting cases with similar affirmations); *see also Halo Elecs., Inc. v.Pulse Elecs.., Inc.*, No. 2023-1772, 2025 WL 649737, at *9 (Fed. Cir. Feb. 28, 2025).

infringement." *Truseal Techs., Inc. v. GGK Distribution, LLC*, No. 3:08-cv-1836-N, 2012 WL 12981759, at *3n.5 (N.D. Tex. Mar. 21, 2012) (quoting *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997)).  But the Federal Circuit has since rejected the argument that such evidence is required.  *See Halo Elecs., Inc.*, 2025 WL 649737, at *9 (reiterating wide latitude in selecting interest rates, including state statutory rates).

In any event, there is no dispute that Youtoo's borrowing rate exceeded even the Texas Statutory Rate.  Youtoo clearly suffered increased borrowing costs that would not have been incurred had Twitter paid Youtoo royalties for its infringement.  Prior to filing bankruptcy, Youtoo had outstanding debts of approximately $5.2 million secured by the patents-in-suit.  *See, e.g.*, Day 1 Trial Tr. (Williams) at 87:9–19; PTX-0101.0002–03 and .0008–0010; PTX-0061.0003; PTX-0060.0001.  Youtoo was unable to borrow this money anywhere close to the prime rate.  Periscope was released March 2015.  Day 2 Trial Tr. (Jones) at 152:19–25; PTX-1017-10.  Four months later, Youtoo was in default on $6,406,916.27 in outstanding loans and entered into a forbearance agreement bearing interest of 12%–18.5%.[8]  The harm of the infringement and harm of the debt compounded each other.  Youtoo, receiving no royalties, also had to bring this action to enforce its patents.  This strained Youtoo's finances even further: Youtoo could no longer service its debt, and it was forced into bankruptcy.  *See, e.g.*, Day 2 Trial Tr. (Reed) at 83:11–18.  If Twitter had paid the assessed royalties when its infringement began, these borrowing costs could have been avoided, lenders could have been paid back, and bankruptcy could have been averted.

       *(c)  Alternatively, the Court Should Award Interest Using the Prime Rate, Compounded Quarterly*

---

[8] Dkt. 98-1 at App. 127–136, ¶¶ 2, 5.A.  For comparison, the prime rate was 3.25% at that time. Appx0004, Weinstein Decl. ¶ 4.

As an alternative to applying the state statutory rate, many courts have awarded prejudgment interest from the date of first infringement to the date of judgment using the prime rate and compounding quarterly.[9]  Given the evidence of Youtoo's borrowing costs, the Texas Statutory Rate is more appropriate.  Nevertheless, for the convenience of the Court, VidStream's damages expert, Mr. Weinstein, performed this calculation as an alternative, which would result in prejudgment interest of $67,390,070 through May 14, 2025.  Appx0004, Weinstein Decl. ¶ 6 and Ex. 2.  Based upon the current prime rate of 7.50 percent, interest will accrue at the prime rate at $35,514 per day from May 15, 2025 through the date that judgment is entered.  *Id.*

   2.   The Court Should Award Post-Judgment Interest Under 28 U.S.C. § 1961.

"The purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss of the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v Bonjorno*, 494 U.S. 827, 835–36 (1990).  "Post-judgment interest is awarded as a matter of course" under 28 U.S.C. § 1961 at the one-year T-bill rate, compounded annually.  *Meaux Surface Protection, Inc. v. Fogleman*, No. H-07-585, 2010 WL 11721638, at *2 (S.D. Tex. June 11, 2010); 28 U.S.C. § 1961(a)–(b).  "The principal for calculating post-judgment interest is the entire amount of the final judgment, including attorney's fees, costs, and prejudgment interest." *First Commonwealth Bank v. Auto Resource of Tex. LLC*, No. 3:22-cv-374-L, 2022 WL 16964754, at *5 (N.D. Tex. Nov. 16, 2022) (internal quotations omitted); *see also Halo*, 2025 WL 649737, at *11 (post-judgment interest applies to any accrued prejudgment interest).  Accordingly, VidStream

---

[9] *See, e.g.*, *Kaneka Corp. v. JBS Hair, Inc.*, No. 3:10-cv-01430-P, 2013 WL 12123946, at *6 (N.D. Tex. Oct. 24, 2013); *SB IP Holdings LLC v. Vivint, Inc.*, No. 4:20-cv-00886, 2024 WL 3939545, at *2 (E.D. Tex. Aug. 26, 2024); *NCS Multistage Inc. v. Nine Energy Service, Inc.*, No. 6:20-cv-00277-ADA, 2023 WL 149071, at *3 (W.D. Tex. Jan. 9, 2023); *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597, 2019 WL 2389150, at *21 (N.D. Cal. June 5, 2019).

requests post-judgment interest on the full amount of the final judgment, including prejudgment interest, costs, and any other awarded amount.  28 U.S.C. § 1961(a)–(b).

### D.  The Court Should Award Costs to VidStream as the Prevailing Party.

The Court should also award costs to VidStream as the prevailing party.  A party "prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties . . . in a way that directly benefits the party."  *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1087 (Fed. Cir. 2014).  This is so despite the mixed verdict.  Because VidStream prevailed in showing willful infringement resulting in a significant damages award, it is the prevailing party.  *Id.* (reversing conclusion that neither party was the prevailing party in mixed verdict context and holding patentee prevailing party).

Given that VidStream is the prevailing party, VidStream is entitled to an award of its taxable costs.  "[T]here is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs," *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012).  VidStream, as the prevailing party, "is presumptively entitled to its costs . . . ."  *McGowan v. S. Methodist Univ.*, No. 3:18-CV-00141-N, 2024 WL 3891358, at *1 (N.D. Tex. Aug. 20, 2024).  Given that VidStream is the prevailing party as a matter of law, there is no reason to withhold costs.  VidStream will file an appropriate bill when judgment is entered.[10]

### III.  CONCLUSION

For the reasons stated above, VidStream respectfully requests the Court enter the judgment attached in VidStream's proposed order.

---

[10] Resolution of any costs will not affect the finality of the judgment.  The Court can also permit VidStream's bill of costs to be filed after any appeal.  Fed. R. Civ. P. 54(d) ("unless the Court orders otherwise . . ."); *see also* Adv. Comm Notes (noting that 54(d) issues do "not affect the finality or the appealability of a judgment"); *Samaad v. City of Dallas,* 922 F.2d 216, 218 (5th Cir. 1991) (costs and fees are treated the same for Rule 54(d)).

DATED: May 14, 2025

Respectfully submitted,

*/s/ John F. Summers*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
Brian D. Johnston
Texas State Bar No. 24080965
Email: bjohnston@caldwellcc.com
Daniel R. Pearson
Texas State Bar No. 24070398
Email: dpearson@caldwellcc.com
Robert Seth Reich, Jr.
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Adrienne R. Dellinger
Texas State Bar No. 24116275
Email: adellinger@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
Email: bblomquist@caldwellcc.com
Richard A. Cochrane
Texas State Bar No. 24116209
Email: rcochrane@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

**ATTORNEYS FOR PLAINTIFF
VIDSTREAM LLC**

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon all counsel of record on May 14, 2025 via the Court's CM/ECF system.

*/s/ John F. Summers*
*John F. Summers*

### CERTIFICATE OF CONFERENCE

The parties conferred over the issue raised in this motion between April 21, 2025 and May 5, 2025.  Twitter opposes VidStream's requested relief.

*/s/ John F. Summers*
John F. Summers